THE PEOPLE *ex rel*. NOAH BRAVER, Plaintiff-Appellee, v. ODIE WASHINGTON, Director, Department of Corrections, Defendant-Appellant.

First District (5th Division)   No. 1—97—4693

Opinion filed December 30, 1999.

GREIMAN, J., dissenting.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellant.

Rittenberg & Buffen, Ltd. (David L. Buffen and D. Seth Holliday, of counsel), and Kaplan & Sorosky, Ltd. (Sheldon Sorosky, of counsel), both of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant Odie Washington (Washington), Director, Illinois Department of Corrections (IDOC), appeals from the circuit court's orders granting plaintiff Noah Braver's petition for "writ" of *mandamus*,[1] seeking an award of meritorious good-time credits by Washington sufficient to result in Braver's immediate release from prison, and denying Washington's motion to vacate the granting order.

Washington raises the issue of whether the circuit court's decision to grant Braver's application for *mandamus*, requiring his immediate release from IDOC custody, was against the manifest weight of the evidence or, alternatively, constituted an abuse of discretion.

On November 10, 1997, Braver filed a combined action for *habeas corpus* and *mandamus* against Washington, as Director, claiming that he was being held in custody illegally at an IDOC facility in Vandalia, Illinois, which imprisonment violated his rights to due process and equal protection under the United States and Illinois Constitutions.

The following facts are derived from Braver's pleadings. On March 19, 1997, Chicago police officers stopped him for a traffic violation while he was driving his car. The officers found a gun in his car and arrested and charged him with the offense of unlawful use of weapons, a Class 4 felony. Braver, an 18-year-old, was unemployed and indigent at the time of his arrest and was unable to make bail, remaining in the custody of the Cook County Department of Corrections (CCDC) during the entire pendency of his case prior to trial.

On August 25, 1997, Braver pled guilty to the offense of unlawful use of weapons. The circuit court entered judgment on his guilty plea and later sentenced him to a term of 18 months in an IDOC facility, ordering that the jail time Braver served in the CCDC (217 days from the date of his arrest to the date of sentencing) be applied to his sentence. On October 24, 1997 (three days after sentencing), Braver

---

[1]"Writs" of *mandamus* and *habeas corpus* were abolished by the legislature in 1982, for which orders of *mandamus* were substituted. 735 ILCS 5/2—1501 (West 1996). Likewise, such an action is commenced by filing a complaint for *mandamus*, rather than a "petition" under the *mandamus* statute. 735 ILCS 5/14—102 (West 1996).

was transferred from the CCDC to IDOC. When Braver arrived on that date, he had been in custody for 220 days. Although he had already served 220 days of his jail sentence, Braver was not immediately released from IDOC's custody. Given a projected release date of December 19, 1997, Braver was required by IDOC to serve a total of 276 days in jail, which was in excess of his 270-day sentence (statutory nine-month requirement).

Braver asserted that because of the extreme overcrowding of inmates, IDOC has established a policy of awarding each inmate 90 days of extra meritorious good-time credit, in addition to the statutory day for day "good-time" credit given to each inmate. As a prerequisite to the award of meritorious good-conduct credit, however, IDOC also has a regular policy and custom of requiring each inmate to serve at least 61 days in IDOC or as close to 61 days as the inmate's sentence will allow.

Braver claimed that IDOC has established a policy whereby its Director has surrendered his discretion, which has been supplemented by an established and regular policy of granting of 90 days meritorious good-time credit to certain classes of inmates, namely, "all inmates who receive the usual and ordinary day for day meritorious good time credit." Braver claimed to have been a member of the class of inmates who regularly and routinely receives an extra 90 days of meritorious good-time credit and, therefore, should have been released by IDOC immediately upon being placed in its custody. Because his release date was December 19, 1997, he "will serve 94 days in jail in excess of actually serving 6 months in jail," without any rational basis for him to be denied "the usual 90 days meritorious good time awarded to all inmates." If he had had sufficient funds to post bail, he would have been released after serving only 180 days in jail, as opposed to the 276 days he would actually serve, because he would have been given the 90 days of meritorious good-time credit. Accordingly, this IDOC policy violated Braver's right to equal protection of the law and due process. Relying on *Hampton v. Rowe*, 88 Ill. App. 3d 352, 410 N.E.2d 511 (1980), and *Freeman v. Lane*, 129 Ill. App. 3d 1061, 473 N.E.2d 584 (1985), Braver seeks to be treated similarly to an individual able to post bond and receive the automatic 90 days of meritorious good-time awarded to all inmates.

In conclusion, Braver argued that IDOC's policy of requiring each inmate to serve at least 61 days in IDOC, or as close to 61 days as the sentence will allow, regardless of the amount of jail time the inmate has spent in a county jail, violates an inmate's rights to equal protection and due process, and prayed that (1) *habeas corpus* be ordered releasing him from custody immediately, or, in the alternative, (2)

*mandamus* be ordered, with directions to respondent to treat Braver's 220 days served in county jail as 220 days served in the penitentiary; and (3) he be granted the 90 days of meritorious good time awarded to all inmates in his classification.

On December 4, 1997, an evidentiary hearing was held on Braver's combined action. The State called two IDOC employees as witnesses, Mark McHugh and Laurie Schellinger. McHugh testified that the award of meritorious good time is discretionary, explaining that the Director considers the recommendation of staff members at the institution where the person is incarcerated. Such recommendation is made after the inmate has been in the facility for 30 days. Actual awards are not made until the inmate has been in an IDOC facility for 60 days, regardless of whether the inmate has spent time in the county jail prior to the trial or has been out on bond. This time period allows staff to assess the inmate's adjustment to the system and to determine whether the inmate has earned the award.

McHugh stated that "certainly by no means" is the award given to every inmate. There is no IDOC policy which mandates that every inmate be given the meritorious good-time award. For example, in the fiscal year ending June 30, 1997, 20% of the inmates received less than 90 days, and 13% received no credit. McHugh also explained that there are no written criteria used to determine whether an inmate should be given the award. The factors considered include length of sentence, behavior, nature of the sentence, criminal background and nature of the offense.

Schellinger, IDOC's legal counsel, testified that one of the reasons for waiting before any meritorious good time is awarded is to enable the staff to have time to observe the inmate and obtain any relevant and available information regarding that individual.

In arriving at its decision, the circuit court recognized the discretionary nature of the award of meritorious good time, but found it was "fundamentally unfair" for Braver, who was unable to make bond, to spend more time in custody than someone who is able to make bond. On December 4, 1997, the court ordered IDOC to release Braver immediately.

On December 8, 1997, Washington filed an emergency motion to vacate the court's December 4, 1997, order, noting that Braver's action for *mandamus* was not properly served and, in any event, that it should not have been granted because the award of meritorious good time is a discretionary matter not subject to *mandamus*. Attached to the motion was the affidavit of Susan O'Leary, IDOC's chief legal counsel, who averred that the decision to award meritorious good time is made on a case-by-case basis after review by both the institution

■■■■■■■■■

and central office personnel. Meritorious good time is not awarded on a fixed increment of time and can range anywhere from 1 to 90 days.

Washington's motion included further the affidavit of David M. Boots, IDOC's planning and research unit manager, whose responsibilities include compiling, analyzing, and generating statistics regarding inmates incarcerated with IDOC. Boots stated that during fiscal year 1997, 18.5% of the inmates released from IDOC facilities received less than 90 days of meritorious good time and 12.9% of those eligible received no meritorious good time.

The motion to vacate also was supported by the affidavit of Diane Jockisch, IDOC's transfer coordinator, whose staff reviews recommendations for awards of meritorious good time. Jockisch averred that, according to IDOC policy, the review may occur no earlier than 30 days after an inmate is placed in IDOC's custody, allowing the institution time to observe the inmate's adjustment to prison and taking into consideration the fact that IDOC rarely receives documentation of an inmate's pre-IDOC behavior or adjustment. The Director's decision whether to award meritorious good time generally begins at the institutional level, where a staff recommendation to award meritorious good time is reviewed by the warden of the facility. If the warden approves the recommendation, the transfer coordinator's office must then approve or deny the recommendation, as designee of the Director. Individual cases are evaluated based on factors including the nature of the inmate's offense, the inmate's criminal history and institutional adjustment, and the potential impact of the inmate's early release on the community.

Jockisch stated that IDOC officials must have time to observe and evaluate an inmate for meritorious-good-time-award consideration and ensure that early inmate releases that may result from such awards do not impact adversely on public safety and security. It is IDOC's policy that an inmate must serve a minimum of 60 days in its custody prior to being given meritorious good-time credit. She also stated that consideration may be given to whether an inmate is the subject of pending good-conduct-revocation proceedings or other disciplinary matters. Because the State's 102 counties do not follow the IDOC's procedures and disciplinary practices, the automatic award of meritorious good time to inmates immediately upon their entry to IDOC custody would result in the unequal treatment of inmates.

On December 9, 1997, the circuit court denied Washington's motion to vacate, and this appeal followed.

■ Notwithstanding the fact that defendant sought an order of *habeas corpus* in his pleadings, as above noted, that remedy was not pursued in the circuit court nor is it argued in this appeal.

Further noted is the fact that defendant has served all the prescribed time, thereby rendering this cause moot under ordinary circumstances, unless the matter falls under the "substantial public interest exception." The criteria for application of the public interest exception include (1) the existence of a question of public nature; (2) the desirability of an authoritive determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d 247, 257, 537 N.E.2d 292 (1989); *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 783, 709 N.E.2d 1281 (1999). There must be a clear showing of each factor in order to bring a case within this exception. *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 125-26, 664 N.E.2d 252 (1996). This exception is invoked only on rare occasions where there is an extraordinary degree of public concern and interest. *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 410, 550 N.E.2d 998 (1990). The case *sub judice* presents such circumstances, in that the liberty interests of many hundreds of prisoners may be involved at present, as well as in the future.

I

Washington contends that the circuit court erred in granting Braver's action for *mandamus*, requiring his release from IDOC custody, because Braver had no clear right to meritorious good-time credits. Although reviewing courts may differ as to the appropriate standard of review to employ, Washington asserts, the court's order granting the petition should be reversed because it was against the manifest weight of the evidence or, alternatively, constituted an abuse of the court's discretion.

*Mandamus*, an extraordinary remedy, is awarded in the exercise of judicial discretion according to legal principles (*People ex rel. Kula v. O'Connell*, 394 Ill. 409, 414, 68 N.E.2d 758 (1946); *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109, 682 N.E.2d 182 (1997) (*Baldacchino*)); it is appropriate when necessary to compel a public officer to perform purely ministerial duties, requiring no exercise of judgment on the part of the public officer. *People ex rel. Pyrzynski v. Daley*, 34 Ill. App. 3d 1077, 1080, 341 N.E.2d 24 (1975); *Baldacchino*, 289 Ill. App. 3d at 109. *Mandamus* will not issue to direct the manner of performance of an action requiring the exercise of discretion (*Freeman v. Lane*, 129 Ill. App. 3d 1061, 1063, 473 N.E.2d 584 (1985) (*Freeman*)), but "is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel." *Baldacchino*, 289 Ill. App. 3d at 109, citing *Vanko v. Sheahan*, 278 Ill. App. 3d 302, 303, 662

N.E.2d 512 (1996). A decision to grant or deny *mandamus* will be reversed on appeal only when it is against the manifest weight of the evidence. *Machinis v. Board of Election Commissioners*, 164 Ill. App. 3d 763, 768, 518 N.E.2d 270 (1987); *Baldacchino*, 289 Ill. App. 3d at 109.

Washington argues that because the Director exercises discretion to determine which inmates are entitled to meritorious good-time awards and the amount of meritorious good time, if any, to award an inmate, the Director's decision is based on consideration of various factors and is not subject to *mandamus*. By granting Braver's petition and ordering him released from IDOC's custody, the circuit court usurped the Director's authority, impermissibly exercising the discretion that the legislature gave solely to the Director. He asserts that the Unified Code of Corrections' language makes clear that there is no entitlement to the type of good-conduct credit involved in this case, namely, meritorious good-time credit. We agree.

## II

█ In the present case, the Director established the discretionary nature of the award, where witnesses McHugh and Schellinger testified that the Director uses his discretion to determine whether to award meritorious good time based on various factors. Affidavits submitted by O'Leary, Boots and Jockisch also established that the Director is not compelled to award meritorious good-time credit to any particular inmate. The evidence submitted by the IDOC officials should not have been ignored; it clearly demonstrated that Braver's assertion had no basis in fact. Brooks stated that of the 21,611 inmates released from the Department prisons in fiscal year 1997, 4,106 of the inmates received less than 90 days of meritorious good time and 2,194 received no award at all.

Based on the plain language of section 3—6—3 of the Unified Code of Corrections, the legislature intended the decision to award meritorious good-time credit to rest within the discretion of the IDOC Director. 730 ILCS 5/3—6—3 (West 1996). The circuit court's decision to grant Braver's action for *mandamus* was against the manifest weight of the evidence. Braver had no clear right to an award of meritorious good-time credit, let alone a specific number of days on a specific date. The court's analysis should have ended there. It did not. Braver failed to establish that IDOC treated similarly situated persons in a dissimilar manner. The IDOC policy, of requiring that an inmate be confined for 30 days before being considered for an award and approximately 60 days before credit is awarded, allows IDOC time to assess each inmate, which includes consideration of pre-IDOC behavior or adjustment based on any documentation received. Such a policy

helps to ensure that public safety and security are not compromised when an inmate is released early. This cause is, therefore, reversed.

Washington next maintains the circuit court erroneously concluded that the Director's failure to award Braver meritorious good-time credit violated his right to equal protection. Although this matter has been resolved as to Braver, we consider this due process argument by virtue of its potential application in future cases. The circuit court here acknowledged the discretionary nature of the Director's decision whether to award meritorious good-time credits, yet based its decision on what it termed "fundamental fairness," apparently agreeing with Braver's assertion that the IDOC policy of awarding meritorious good-time credit only after an inmate has been in IDOC custody for about 60 days violated his right to equal protection because it was unfair to those inmates spending pretrial time in county jail, as compared to those individuals out on bond.

Braver asserts that due process and equal protection of the law entitled him to meritorious good time for the period he served in the county jail, emphasizing IDOC's fundamentally unfair policy of treating indigent and nonindigent inmates differently with respect to its behavior evaluation policy. Pointing out that 90% of IDOC's inmate population receives meritorious good-time credit, and the absence of written criteria on which to award such credit, he urges that the statistics show the *de facto* existence of IDOC's policy of automatically granting meritorious good-time credit to all inmates who receive the usual and ordinary day for day meritorious good-time credit. Braver maintains that IDOC's admittedly serious administration problem regarding evaluation of inmates' pre-IDOC incarceration behavior is IDOC's responsibility to solve and the consequences of those problems should not be placed on the indigent prisoner.

Statutory construction requires that the intention of the legislature be ascertained and given effect; in doing so, courts look first to the statute's terms. *Lane v. Sklodowski*, 97 Ill. 2d 311, 316, 454 N.E.2d 322 (1983).[2]

The award of good-conduct time and the decision to consider such

---

[2]Section 3—6—3 of the Unified Code of Corrections provides in relevant part:

"§ 3—6—3. Rules and Regulations for Early Release.

(a)(1) The Department of Corrections shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department which shall be subject to review by the Prisoner Review Board.

\* \* \*

an award are discretionary by statute; the Director of IDOC is not required to grant the time or even consider it, absent a clear duty to

    (2.1) For all offenses, other than those enumerated in subdivision (a)(2) committed on or after the effective date of this amendatory Act of 1995, the rules and regulations shall provide that a prisoner who is serving a term of imprisonment shall receive one day of good conduct credit for each day of his or her sentence of imprisonment or recommitment under Section 3—3—9. Each day of good conduct credit shall reduce by one day the prisoner's period of imprisonment or recommitment under Section 3—3—9.

* * *

    (3) The rules and regulations [of the Department of Corrections] shall also provide that the Director may award up to 180 days additional good conduct credit for meritorious service in specific instances as the Director deems proper; except that no more than 90 days of good conduct credit for meritorious service shall be awarded to any prisoner who is serving a sentence for conviction of first degree murder, reckless homicide while under the influence of alcohol or any other drug, aggravated kidnapping, kidnapping, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, deviate sexual assault, aggravated criminal sexual abuse, aggravated indecent liberties with a child, indecent liberties with a child, child pornography, heinous battery, aggravated battery of a spouse, aggravated battery of a spouse with a firearm, stalking, aggravated stalking, aggravated battery of a child, endangering the life or health of a child, cruelty to a child, or narcotic racketeering." 730 ILCS 5/3—6—3(a)(1), (a)(2.1), (a)(3) (West 1996).

Section 107.210 of Title 20 of the Administrative Code states in part:
    "Section 107.210 Awarding of Meritorious Good Time
    a) In determining whether or not to award good conduct credits for meritorious service, the Director may examine or consider, among other matters:
    1) The complete master record file of the committed person.
    2) Reports or recommendations made concerning the committed person.
    3) The fact that the committed person has not violated any rule of the Department over a period of time.
    4) The job performance of the committed person while in the custody of the Department.
    5) The educational program or achievements of the committed person while in the custody of the Department.
    6) The action of the committed person in:
        A) Saving the life of an employee or other committed person;
        B) Performing heroic service during a flood, tornado, or act of God;

act, which is not present here. *Brewer v. Peters*, 262 Ill. App. 3d 610, 613, 633 N.E.2d 17 (1994).

■ The equal protection guarantees of the United States and Illinois Constitutions mandate that state regulations and legislation accord similar treatment to similarly situated persons. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *Hampton v. Rowe*, 88 Ill. App. 3d 352, 354, 410 N.E.2d 511 (1980) (*Hampton*). In the absence of "the existence of a classification which is inherently suspect or the infringement of a fundamental right, distinctions drawn by a State governmental unit in determining the application of a particular policy must be rationally related to the furtherance of a legitimate governmental interest to comply with the requirements of equal protection." *Hampton*, 88 Ill. App. 3d at 355. The standard of review, therefore, when considering an alleged equal protection violation is the rational basis test. Once a discriminatory classification is shown, under the rational basis test the court first must look to the purposes behind the legislative scheme at issue, and then determine whether the classification bears a rational relationship to a legitimate legislative purpose. *Hampton*, 88 Ill. App. 3d at 355; *People v. Miles*, 53 Ill. App. 3d 137, 142, 368 N.E.2d 187 (1977).

■ At issue in the case at bar is the discretionary credit awarded for meritorious service under subsection 3 of section 3—6—3(a), not the good-conduct credit automatically earned by a prisoner pursuant to subsection 2.1. In *People v. Coleman*, 140 Ill. App. 3d 806, 489 N.E.2d 455 (1986), the court noted that "credit for meritorious service under subsection (3) is neither automatically given by statute nor awarded by the Director." *Coleman*, 140 Ill. App. 3d at 813. Here, the record demonstrates that Braver's assumption that all inmates are awarded 90 days of meritorious good-time credit as soon as they have been in custody for about 60 days is unsupportable. The statistics

---

C) Volunteering for an exceptionally hazardous or dangerous assignment; or

D) Assisting in maintaining control during a general disturbance.

b) The decision to grant meritorious good time may be initiated unilaterally by the Director.

c) In addition, petitions for granting meritorious good time may be submitted by any committed person or by any person or persons in the employ of the Department of Corrections on behalf of any committed person.

d) No committed person shall be granted more than 180 days of meritorious good time during a term of incarceration." 20 Ill. Adm. Code §§ 107.210(a) through (d) (1996).

show instead that not all inmates receive an award of meritorious good-time credit and those that do do not necessarily receive the full amount allowed pursuant to section 3—6—3(a)(3). Nor do they necessarily receive such an award on their sixty-first day of incarceration.

Braver's reliance on *Hampton* also is misplaced. There, the circuit court denied the prisoner's action for *mandamus*, seeking to compel the Director of IDOC to credit him with *compensatory* good time for his preconviction confinement in county jail. The circuit court's decision, finding IDOC's regulation of giving *compensatory* credit only to those inmates in IDOC custody, violated Hampton's right to equal protection because it was not rationally related to a legitimate government purpose, creating a discriminatory classification in that inmates such as Hampton were treated differently because of their pretrial confinement.

Unlike the *compensatory* good time at issue in *Hampton*, *meritorious* good time, as previously stated, is not automatic but is given to all eligible inmates, based upon the Director's discretion after considering numerous factors. Such an award varies in amount depending on the assessment, with a maximum award being set by section 3—6—3.

Further, *Freeman*, another case upon which Braver relies, is procedurally distinguishable. In *Freeman*, this court reversed the dismissal of the petition for writ of *mandamus*, finding that the prisoner had alleged sufficient facts to state a claim for relief where he alleged that IDOC had an established policy of crediting inmates with meritorious good time on a regular basis. The Director filed a motion to dismiss wherein he addressed only the legal sufficiency of the petition. The court remanded the matter for a hearing on the petition to determine whether IDOC had an established and regular policy of awarding meritorious good time to a certain class of inmates, stating that the petition would be denied if the Director established the discretionary nature of his decision to award meritorious good-time credit.

Therefore, even under an equal protection analysis, requiring an inmate to spend at least 60 days in IDOC custody is rationally related to legitimate government interests. Holding such a procedure, under the foregoing circumstances, as violative of Braver's due process rights was error, and the circuit court's decision on this ground is also reversed.

For the reasons set forth above, the judgment awarding Braver's *mandamus* action must be reversed.

Reversed.

THEIS, P.J., concurs.

JUSTICE GREIMAN, dissenting:

The majority appears to be correct in its conclusion that the "writ" of *mandamus* does not lie because, although the label of this extraordinary remedy has changed, *mandamus* is only used to compel a public official to exercise an act over which he has no discretion. Section 3—6—3 of the Unified Code of Corrections clearly provides the Director with discretion to adopt appropriate rules and regulations for early release and thereafter to exercise discretion in granting such early out.

This is a liberty issue! Here we are called upon to determine whether the discretion granted to the Director of the Department of Corrections has resulted in a plan that discriminates against convicted defendants who were unable to make bail during the pendency of their criminal case.

The language of any regulations adopted in this regard must be stated in terms that provide for equal treatment of all like prisoners. But it is not enough that the terms of the regulation be facially equal. They must also be equal in their application as well.

Rarely has the old remark, "I've been rich and I've been poor and, believe me, rich is better" been more apropos. The defendant here served a term 55% longer than he might have, had he been able to make bail.

Make no mistake, I do not suggest that the Director has concocted some cunning plan to hold convicts with short-term sentences. Rather, there has been a bureaucratic failure to discern the impact of the plan on those prisoners unable to make bail after they are charged. I believe, as did the courts in *Hampton v. Rowe*, 88 Ill. App. 3d 352 (1980), and *Freeman v. Lane*, 129 Ill. App. 3d 1061 (1985), that where the process established by the public official denies a citizen equal protection, the acts of the public official are no longer discretionary. Our system does not countenance the exercise of discretion that violates another's constitutional rights.

Let us examine the critical dates in the life of this 18-year-old defendant and compare the difference making bail would have meant for him:

| Indigent Defendant | Defendant Making Bond |
|---|---|
| 3/19/97 Defendant arrested; unable to make bond | 3/19/97 Defendant arrested; makes bond |
| Defendant sentenced to 18 months (540 days) | Defendant sentenced to 18 months (540 days) |
| 10/24/97 Defendant transferred to DOC after pleading guilty and serving 220 days in county jail | 10/24/97 Defendant transferred to DOC after pleading guilty, serving -0- days in county jail |
| IDOC policies: <br> 1) day-for-day good-time credit <br> 2) up to 90-days meritorious good-time credit—but requiring 60 days' service before allowing meritorious good-time credit ||
| Defendant entitled to day-for-day reduction: <br> 540 days - 270 days = 270 days | Defendant entitled to day-for-day reduction: <br> 540 days - 270 days = 270 days |
| Defendant has served 220 days at time of transfer to DOC, but must serve additional 60 days before eligible for meritorious good-time credit | Defendant has served -0- days at time of transfer to DOC; gets full 90 days meritorious good-time credit |
| Defendant's total prison time <br>   220 days in county jail <br>   + 60 days served in DOC <br>   280 days served in total | Defendant's total prison time <br>   -0- days in county jail <br>   + 180 days served in DOC <br>   180 days served in total |
| **Defendant serves 100 days more because he was unable to make bond.** ||

I recognize that while the defendant without bail will serve 100 additional days as a result of his being unable to make bond, he would have served at least 40 of those days in any event because of length of his pretrial incarceration.

It has not been clear that what appears to be a discretionary charge to the Director will always be so treated. Although the majority dismisses *Freeman*, the court there held that what appeared to be discretionary in nature could become a *de facto* nondiscretionary policy in awarding good-time credit. In *Freeman*, the court returned the matter to the trial court to determine whether the Director had established an appropriate policy for the awarding of good-time meritorious credit. Implicit in this finding is the obligation to create a system that will not violate the convict's right to equal protection under both the United States Constitution and the Illinois Constitution. In *Hampton* the issue was precisely whether the Director's rules regarding meritorious good time denied equal protection of law to those who

served part of their sentence in the county jail because of their inability to make bail during the pendency of his case. In *Hampton*, as here, the Director classified the defendant in a manner that violated his equal protection of the law. As in *Hampton*, the Director seeks to introduce evidence based upon "bureaucratic babble" concerning the insurmountable difficulties that the Department of Corrections must face in making the proper evaluation.

The majority gleans from the Department witnesses that the factors to be considered are the "length of sentence, behavior, nature of the sentence, criminal background and nature of the offense." Can it be that the prisoner appears at the institution's door without any paperwork? Certainly, the prison officials who are to make the decision have everything except his "behavior" on paper. Why the 61-day wait? Why do we have to find out what kind of a prisoner he will be when it is clear that he will not be a prisoner very long?

The majority also provides us with statistical evidence that not all prisoners receive the meritorious good-time credit and that some receive less than the 90 days. These are, of course, meaningless statistics since we are not told whether the convicts are denied this time because they are smuggling dope into the institution, have attacked a guard with a shiv or are like our defendant who will also receive less than the 90 days because he will be serving more time than required by his sentence when computed in contemplation of day-for-day good time and meritorious good time. They do not furnish us with the startling statistic that the defendant will serve 55% more time than if he had made bail.

The Director could waive the 60-day rule for defendants who have served most of their time in county jail or could adopt a rule that requires immediate consideration of a convict's case when he is transferred to the institution with little of his sentence left to be served.

I would affirm the trial court and hope that the Director would institute new procedures that would not make his rules and regulations unconstitutional as applied.