NO. 4-01-0878

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MICHAEL MASON, 

          Plaintiff-Appellant,

v.

DONALD N. SNYDER,

          Defendant-Appellee.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Livingston County

No. 01MR79

Honorable

Harold J. Frobish,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In August 2001, plaintiff, Michael Mason, an inmate at the Pontiac Correctional Center (Pontiac), filed a 
pro
 
se
 
mandamus
 petition 
against Donald N. Snyder (Director), Director of the Illinois Department of Corrections (DOC).  The petition alleged that various DOC administrative bodies had either found him guilty or confirmed a guilty finding that he had violated DOC disciplinary rules, resulting in his loss of good-time credits and an adverse classification status within DOC.  Plaintiff asked the trial court to issue an order of 
mandamus
 (1) expunging the disciplinary action taken against him by DOC, and (2) directing DOC to provide him a proper disciplinary hearing.  

Four days after the petition was filed, the trial court 
sua
 
sponte
 reviewed it, concluded that it did not state a cause of action, and ordered it stricken.

Plaintiff appeals, and we affirm.

I. BACKGROUND

Plaintiff’s petition, which consisted primarily of a preprinted form with blank spaces for the insertion of specific information, stated that plaintiff was a Pontiac inmate serving a 60-year sentence for first degree murder.  The petition alleged that the Director was responsible for “the Illinois Department of Corrections, Administrative Review Board, and Prisoner Review Board Disciplinary hearings on appeal.”  The preprinted portion then alleged that plaintiff had requested that “the defendants [
sic
] perform specific ministerial duties.  The defendants have refused to perform such duties regardless of plaintiff’s clear entitlement to performance of the specific duties[,] which are set forth as follows.”  The only thing plaintiff wrote in the blank space after this preprinted section was the following: “20 Ill. Adm. Code Section 504.80(k)(1).”

On the preprinted portion stating, “As a result of [d]efendant’s actions, [p]laintiff will suffer irreparable damages and be subjected to _________," plaintiff wrote the following: “unlawful punitive segregation, loss of good-time credits, and loss of institutional privileges.”

The section of the Illinois Administrative Code (Code) to which the petition refers states only that if the prison adjustment committee finds the inmate did not commit the offense charged, then the disciplinary report shall be dismissed and expunged from the inmate's master record file.  20 Ill. Adm. Code §504.80(k)(1) (Conway Greene CD-ROM June 2001).  Another section of the Code provides that a prison’s adjustment committee shall decide in a disciplinary proceeding whether an accused inmate committed the offense charged based on all relevant information and evidence, and must be reasonably satisfied that “there is some evidence that the committed person committed the offense for the individual to be found guilty.”  20 Ill. Adm. Code §504.80(j)(l) (Conway Greene CD-ROM June 2001).  

Attached to the petition was an untitled document (the document) that plaintiff apparently wrote out in longhand.  The document contains five paragraphs, each of which plaintiff designates as a “ground,” and provides the following allegations. 

In March 2001, plaintiff was issued a major disciplinary ticket accusing him of sexual misconduct and insolence “which was based on a lie by a correctional guard[,] Josephina Williams.”  The institutional adjustment committee before whom plaintiff appeared on this charge was chaired by Benny Dallas, even though plaintiff informed Dallas that plaintiff had a lawsuit pending against him and requested Dallas to recuse himself from the hearing.  The document asserts, “Dallas lied[,] stating he has no knowledge of such a lawsuit and denied plaintiff’s request.”  

After the committee found plaintiff guilty, he filed an institutional grievance.  However, the reviewing grievance officer (1) failed to provide plaintiff with a fair and impartial review hearing, (2) agreed with the committee, and (3) denied plaintiff’s grievance.  The chief administrative officer thereafter concurred.  

Plaintiff then submitted his grievance to the administrative review board, but it denied him relief.  He later forwarded his documents to the Director, who also concurred with the administrative review board.  

The document then states that plaintiff appeared before the Prisoner Review Board regarding the revocation of his good-time credits, complaining that the Director, upon revoking those credits, failed to provide plaintiff with a written statement as to evidence relied on or reasons for the action taken against him.  The document does not say that the Prisoner Review Board denied plaintiff any relief, but that seems to be the implication.

After plaintiff's petition was filed, the Livingston County circuit clerk referred it to the trial court, which entered the following order four days later: 

“Court reviews filing of [p]laintiff; [c]ourt finds that [p]laintiff is complaining of the result of certain disciplinary proceedings.  Therefore, [c]ourt finds that [p]laintiff has not stated a cause of action and accordingly [p]etition is ordered stricken.”

The common-law record contains no indication that before the court 
sua
 
sponte
 ordered the petition stricken, any summons was issued to the Director, DOC, or any other prison authority.  Accordingly, no attorney ever appeared on behalf of the Director at the trial level. 

Plaintiff filed a timely notice of appeal.  

II. ANALYSIS

The gist of defendant’s argument on appeal is contained in the following quote from his brief: 

“Writer of ticket[,] Josephina Williams[,] made miscellaneous allegations against Mr. Mason[.] [A]t no time did Josephina Williams indicate she eye-witnessed [
sic
] Mr. Mason committing a violation of departmental rules, nor was she at Mr. Mason [
sic
] cell.  The disciplinary report was insufficient to permit a conviction by the tribunal.”

This appeal is unusual because appellant appears 
pro
 
se
 and no one appears on behalf of appellee.  However, because the record before us is simple--indeed, it could hardly be more so-- and the claimed errors are such that this court can easily decide them without the aid of an appellee's brief, we will decide this case on its merits.  
Cf
. 
First Capitol Mortgage Corp. v. Talandis Construction Crop.
, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976) (no appellee brief filed).  

A. 
Mandamus
 Generally

Resolving this appeal requires us to review the law pertaining to 
mandamus
.  In 
Hatch v. Szymanski
, 325 Ill. App. 3d 736, 739, 759 N.E.2d 585, 588 (2001), the court discussed 
mandamus
 as follows:

"
Mandamus
 relief is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public official where the official is not exercising discretion.  A court will not grant a writ of 
mandamus
 unless the petitioner can demonstrate a clear, affirmative right to relief, a clear duty of the official to act, and clear authority in the official to comply with the writ.  The writ will not lie when its effect is to substitute the court's judgment or discretion for the official's judgment or discretion.  
Mandamus
 relief, therefore, is not appropriate to regulate a course of official conduct or to enforce the performance of official duties generally."

See also 
Durbin v. Gilmore
, 307 Ill. App. 3d 337, 339, 718 N.E.2d 292, 294 (1999) ("The issuance of a writ of 
mandamus
 is an extraordinary remedy, discretionary in nature, and it is appropriate only when there is a clear right to the requested relief, a clear duty of the defendants to act, and clear authority in the defendants to comply with the writ"). 

B. 
Mandamus
 in a Prison Context

DOC inmates have been filing increasing numbers of 
mandamus
 petitions.  This phenomenon hardly seems surprising when, as in the present case, preprinted 
mandamus
 forms seem to be available throughout Illinois prisons.  As a result of these filings, a body of Illinois case law has developed dealing with 
mandamus
 actions brought by inmates against DOC officials.  For instance, in 
Brewer v. Peters
, 262 Ill. App. 3d 610, 613, 633 N.E.2d 17, 19 (1994), the appellate court affirmed the trial court's dismissal of the inmates' 
mandamus
 petitions regarding good-conduct time and explained as follows:  

"For 
mandamus
 to be granted, there must be a clear duty to act on the part of defendant, appellee here, and clear authority to act.  (
Orenic v. Illinois State Labor Relations Board
 (1989), 127 Ill. 2d 453, [467-68,] 537 N.E.2d 784[, 791].)  The award of good-conduct time and the decision to consider granting good-conduct time are discretionary under the statute; defendant is not required to grant the time or even consider it.  A clear duty to act is not present here."

See also 
Helm v. Washington
, 308 Ill. App. 3d 255, 257-58, 720 N.E.2d 326, 328 (1999) (inmate's 
mandamus
 petition properly dismissed because decision to award meritorious good-conduct credit to qualifying prisoners is discretionary).

In 
People ex rel. Braver v. Washington
, 311 Ill. App. 3d 179, 185-86, 724 N.E.2d 68, 73 (1999), the court discussed principles of 
mandamus
 in a prison context, as follows:

"
Mandamus
, an extraordinary remedy, is awarded in the exercise of judicial discretion according to legal principles [citations]; it is appropriate when necessary to compel a public officer to perform purely ministerial duties, requiring no exercise of judgment on the part of the public officer. [Citations.]  
Mandamus
 will not issue to direct the manner of performance of an action requiring the exercise of discretion [citation], but 'is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel.' [Citation.]"

In 
Thompson v. Lane
, 194 Ill. App. 3d 855, 861, 551 N.E.2d 731, 735 (1990), this court explained the policy underlying restrictions on 
mandamus
 petitions brought by prison inmates: 

"Prisoners are not afforded all of the rights and privileges guaranteed to other citizens.  (
Wolff [v. McDonnell
], 418 U.S. [539,] 555, 41 L. Ed. 2d [935,] 950, 94 S. Ct. [2963,] 2974 [(1974)].)  The rights they enjoy are flexible and subject to limitation.  It is therefore necessary to balance the need for efficient and secure prisons against petitioners' rights to be protected against unwarranted losses of liberty.  Prison officials must have broad discretion in structuring and operating the prison disciplinary system.  A court should not meddle in prison affairs unless legitimate constitutional issues are raised that require intervention."

C. The Trial Court's Inherent Authority To Strike

In this case, four days after plaintiff's 
mandamus
 petition was filed, the trial court reviewed it, found it lacking, and 
sua
 
sponte
 ordered it stricken.  The court took this action before the Director or anyone else connected with DOC was served.  Thus, two questions present themselves: (1) Could the trial court determine from plaintiff's petition and its attachments that plaintiff failed, as a matter of law, to set forth a basis for 
mandamus
 relief?  And (2) assuming the court could do so and correctly determined that plaintiff failed to set forth a basis for 
mandamus
 relief, does the court have authority to 
sua
 
sponte
 order the 
mandamus
 petition stricken?  

1. 
Sufficiency
 
of
 
the
 
Mandamus
 
Petition

In 
Romero v. O'Sullivan
, 302 Ill. App. 3d 1031, 1034, 707 N.E.2d 986, 989 (1999), this court affirmed the trial court's dismissal of a DOC inmate's 
mandamus
 petition and wrote the following: 

"
Mandamus
 is appropriate relief only where a petitioner can demonstrate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the writ.  [Citation.]  The party requesting a writ of 
mandamus
 bears the burden of demonstrating a clear right to the relief desired."  

Further, we have already noted that 
mandamus
 is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel.  
Braver
, 311 Ill. App. 3d at 185, 724 N.E.2d at 73. 

Thus, with the rules governing petitions for 
mandamus
 clearly laid out, we conclude that trial courts may evaluate such petitions to determine their sufficiency, particularly when filed by DOC inmates.  In so concluding, we take judicial notice of our own records, which show an ever-increasing number of appeals brought by inmates in such cases, as well as the fact that DOC currently houses over 46,000 inmates.  The potential to overwhelm the courts and the civil justice system by the filing of groundless DOC inmate 
mandamus
 petitions is clear and real, and one first step to deal with this situation is to recognize the trial court's authority to evaluate such petitions for their sufficiency.

2. 
The
 
Trial
 
Court's
 
Authority
 
To
 
Sua
 
Sponte

Strike
 
Insufficient
 
Mandamus
 
Petitions

We next consider whether a trial court that has examined a 
mandamus
 petition and found it lacking possesses the authority
 to strike it 
sua
 
sponte
.  We hold that the court possesses such authority.

In 
Barrett v. Guaranty Bank & Trust Co.
, 
123 Ill. App. 2d 326, 329, 260 N.E.2d 94, 96 (1970), after the defendant was defaulted, the trial court 
sua
 
sponte
 dismissed the complaint because it did not state a cause of action when plaintiff appeared for a prove-up proceeding on damages.  The plaintiff in 
Barrett
 petitioned for rehearing, relying, in part, on sections 40(2) and 42(1), (2) and (3) of the Civil Practice Act (then Ill. Rev. Stat. 1967, ch. 110, pars. 40, 42 (now 735 ILCS 5/2-610, 2-612 (West 2000)), which generally provided that objections to pleadings, both as to form and substance, (1) must be specific, (2) must be made in the trial court, and (3) if not timely made are forfeited.  
Barrett
, 123 Ill. App. 2d at 330, 260 N.E.2d at 97.  The 
Barrett
 court concluded as follows: 

 “The aforementioned sections do not purport to prevent a trial court from considering the sufficiency of a pleading on its own initiative and it would appear inevitable in a default case that the trial court will give the question some consideration if for no other reason than to determine the sufficiency of the evidence.”  
Barrett
, 123 Ill. App. 2d at 330, 260 N.E.2d at 97.  

See also 
Ronwin v. Piper, Jaffray & Hopwood, Inc.
, 113 Ill. App. 3d 687, 693, 447 N.E.2d 954, 958 (1983) (where the court held that “[a] court has inherent power to protect itself from frivolous and vexatious
 litigation.”  However, that case did not involve a situation in which a trial court 
sua
 
sponte
 dismissed a complaint).

In
 
Crissman v. Strickland
, 43 Ill. App. 3d 496, 498, 357 N.E.2d 222, 224 (1976), this court reversed the trial court's  
sua
 
sponte
 dismissal of a complaint because (1) no motion to dismiss was filed, (2) the trial court did not find that the plaintiff had failed to state a cause of action, and (3) the trial court's action was not “designed to protect the court from harassment or vexatious
 litigation.”  However, the 
Crissman
 court also “agree[d] with the defendant that a trial court has inherent authority to protect itself from and to deal with harassing or vexatious
 litigation and to dismiss complaints that do not state causes of action.”  
Crissman
, 43 Ill. App. 3d at 498, 357 N.E.2d at 224.  In context, this apparently means that a trial court could 
sua
 
sponte
 dismiss a civil complaint as long as the court made the appropriate and necessary findings.

Twelve years later
, this court relied on 
Crissman
 in 
McGann v. Illinois Hospital Ass’n
, 172 Ill. App. 3d 560, 565, 526 N.E.2d 902, 904 (1988), for the proposition that a “court has inherent authority to protect itself from frivolous or vexatious litigation.”  

In 
Rhodes v. Mill Race Inn, Inc.
, 126 Ill. App. 3d 1024, 1028, 467 N.E.2d 915, 918 (1984), the trial court dismissed a count of the plaintiff’s complaint against a defendant who had not filed an appearance or a motion to dismiss.  The 
Rhodes
 court affirmed the dismissal of that count, along with the dismissal of two other counts (to which it appears motions to dismiss had been brought), explaining as follows:  

“[W]e conclude that the trial court properly dismissed the count on its own motion.  The failure of a complaint to state a cause of action is a fundamental defect which may be raised at any time by any means and cannot be waived. [Citation.]  The complaint failed to state a cause of action in strict liability as to Peterson [(who had never appeared)], and the court therefore acted properly in ordering count VII dismissed.  
Crissman v. Strickland
 (1976), 43 Ill. App. 3d 496, [498, 357 N.E.2d 222, 224,] cited by the plaintiff, is distinguishable.  In that case, there was no finding that the counts dismissed on the court’s own motion failed to state a cause of action.”  
Rhodes
, 126 Ill. App. 3d at 1028, 467 N.E.2d at 918.

In 
Mitchell v. Norman James Construction Co.
, 291 Ill. App. 3d 927, 937, 684 N.E.2d 872, 881 (1997), the trial court dismissed 
sua
 
sponte
 some counts of a complaint.  The court’s action occurred in a complicated and somewhat confused hearing regarding which counts were viable and how a pending bankruptcy would affect the case.  After the court dismissed the counts at issue, the plaintiff complained that it did so in the absence of any motion by the defendants.  The court responded that such a motion had been made, but the reviewing court noted that, in fact, no such motion had been made.  In this context, the First District Appellate Court wrote the following:  

“There is little question that a trial court has the authority, on its own motion, to strike a complaint that is insufficient in substance or fails to sufficiently define the issues and order that other pleadings be prepared.  See 735 ILCS 5/2-612(a) (West 1994).  The trial court on its own motion also possesses the authority to dismiss any claim that fails to state a cognizable cause of action.  
Rhodes v. Mill Race Inn, Inc.
, 126 Ill. App. 3d 1024, 1028, 467 N.E.2d 915[, 918] (1984).”  
Mitchell
, 291 Ill. App. 3d at 937-38, 684 N.E.2d at 881.

We note that our holding is inconsistent with the decision this court reached in 
West v. Gramley
, 262 Ill. App. 3d 552, 557, 634 N.E.2d 1261, 1265 (1994).  In 
West
, the trial court dismissed the DOC inmate's 
mandamus
 petition upon finding that he was not, as a matter of law, entitled to a writ of 
mandamus
 to compel the grievance officers and the chief administrative officer of the prison to address his grievances.  The trial court found the grievances "to be frivolous and without merit."  
West
, 262 Ill. App. 3d at 557, 634 N.E.2d at 1265.  We reversed and remanded for an evidentiary hearing on the grounds for dismissal raised by the defendant.  
West
, 262 Ill. App. 3d at 558, 634 N.E.2d at 1266.  In so holding, we made the following observation: 

"We believe the trial court's assessment of plaintiff as a professional litigant who inappropriately burdens the court system with nonmeritorious litigation out of boredom may be correct.  We know the trial courts in counties where correctional centers are located bear the brunt of dealing with litigation fostered by inmates.  We have no creative solution to the problems noted in the trial court's remarks and ruling.  Perhaps we simply add to the problem by reversing, but find we are compelled to do so."  
West
, 262 Ill. App. 3d at 557-58, 634 N.E.2d at 1265. 

Eight years have passed since our decision in 
West
, and we now conclude that the trial courts, which have the inherent authority to control their courtrooms and their dockets, have the corollary authority to utilize their discretion in dealing with "professional litigants" who inappropriately burden the court system with nonmeritorious litigation, stemming from their unhappiness as DOC inmates.  We conclude that trial courts have the authority to 
sua
 
sponte
 order stricken 
mandamus
 petitions the courts find to be frivolous and without merit.  

We encourage trial courts when utilizing this administrative tool to set forth the analysis regarding the deficiencies in any 
mandamus
 petition ordered stricken, especially since, as here, no one will be appearing on behalf of the Director or prison authorities to assist this court in reviewing the appeal of a stricken petition.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse and remand the decision of the trial court.

A prisoner may file a complaint for 
mandamus
 to compel DOC officials to perform as required under the rules adopted by the DOC.  
West v. Gramley
, 262 Ill. App. 3d 552, 557, 634 N.E.2d 1261, 1265 (1994).  Where a complaint for 
mandamus
 alleges that plaintiff has filed grievances which were required to be addressed, dismissal of the complaint is error, even though defendants assert plaintiff in fact failed to submit any grievances.  
West
, 262 Ill. App. 3d at 556-58, 634 N.E.2d at 1265-66 (reversing dismissal of 
mandamus
 complaint).  The majority does not fault the reasoning of 
West
, only its result.  In 
West
, the defendants entered their appearance and filed a motion to dismiss, which was granted by the trial court.  The majority cites no case authorizing the extraordinary procedure employed here, 
sua
 
sponte
 dismissal before service of process or an entry of appearance.

The trial court broadly held that whenever an inmate complains of the results of disciplinary hearings he fails to state a cause of action and the petition will be dismissed.    The majority's holding is less clear.  Is the majority saying that revocation of good-time credit issues can never be raised by 
mandamus
?  Slip op. at 8.  This court held to the contrary eight years ago, in 
West
.  Or is the majority saying that while a good cause of action could be stated, this petition failed to do so?  The majority suggests that 
sua
 
sponte
 
dismissal is appropriate in this case, because this case is one where the court is "dealing with 'professional litigants' who inappropriately burden the court system with nonmeritorious litigation, stemming from their unhappiness as DOC inmates."  Slip op. at 15.  The trial court did not get far enough into the case to form such a conclusion, and the basis on which the majority comes to its own is unclear.

Certainly many 
petitions filed by inmates are frivolous and without merit.  Plaintiff's petition, however, alleges the revocation of six months of good-time credit.  As opposed to the calculation and 
awarding
 of good-time credit, or the 
classification
 of prisoners resulting in potential loss of the opportunity to earn good-time credit, the 
revocation
 of previously earned good-time credit as a sanction for serious misconduct "is unquestionably a matter of considerable importance."  
Wolff v. McDonnell
, 418 U.S. 539, 561, 41 L. Ed. 2d 935, 954, 94 S. Ct. 2963, 2977 (1974) (not as important as the revocation of parole or probation).  Due process requires that an inmate faced with the possible revocation of good-time credits be afforded a hearing, and the right to call witnesses in his defense.  
Whitlock v. Johnson
, 153 F.3d 380, 385 (7
th Cir. 1998).  Due process requires that the revocation of good-time credit be supported by some evidence in the record.  
Hamilton v. O'Leary
, 976 F.2d 341, 344-45 (7th Cir. 1992).  As with other administrative decisions, reviewing courts may not reweigh the evidence supporting revocation of good-time credit but may determine whether the findings are supported by some evidence.  
Board of Education of Rich Township High School District No. 227 v. Brown
, 311 Ill. App. 3d 478, 484, 724 N.E.2d 956, 961 (1999).  

The revocation of good-time credit can be reviewed under 
habeas
 
corpus
, at least where the inmate at the time of the petition has been detained past the time when he would have been released if the credit had not been revoked.  
Hill v. McGinnis
, 224 Ill. App. 3d 658, 662, 587 N.E.2d 44, 47 (1992); 
Robinson v. Schomig
, 326 Ill. App. 3d 447, 449-50, 760 N.E.2d 572, 574 (2001); 
cf.
 
Preiser v. Rodriguez
, 411 U.S. 475, 487-88, 36 L. Ed. 2d 439, 449, 93 S. Ct. 1827, 1835 (1973) (even if restoration of good-time credits did not require immediate discharge "their suits would still have been within the core of 
habeas
 
corpus
 in attacking the very duration of their physical confinement itself").  The revocation of good-time credit can also be reviewed in a section 1983 action (see 42 U.S.C. §1983 (1994)), so long as the inmate seeks relief such as damages or injunctive relief, and not simply restoration of the credit.  
Wolff
, 418 U.S. at 554-55, n.12, 41 L. Ed. 2d at 949-50, n.12, 94 S. Ct. at 2973-74, n.12; 
Whitlock
, 153 F.3d at 389.  The federal courts, however, are anxious not to bypass the state courts, and want to give "the [s]tates the first opportunity to correct the errors made in the internal administration of their prisons."  
Preiser
, 411 U.S. at 492, 36 L. Ed. 2d at 452, 93 S. Ct. at 1837-38.    

Where it is alleged that DOC, in a good-time-credit- revocation case, has failed to perform some specific duty which the plaintiff is entitled to have performed, 
mandamus
 will lie.  
West
, 262 Ill. App. 3d at 557, 634 N.E.2d at 1265.  Plaintiff alleged in his complaint that he did not receive a written statement by the grievance committee of the evidence relied on and the reasons for the disciplinary action.  Such a statement is required by due process and the Code.  
Wolff
, 418 U.S. at 563-66, 41 L. Ed. 2d at 955-56, 94 S. Ct. at 2978-79; 
Hamilton
, 976 F.2d at 344; 20 Ill. Adm. Code §504.80(
l
) (Conway Greene CD-ROM June 2001).  Plaintiff also asserts the action taken was not supported by "some evidence."  "Some evidence" is required by due process and by the Code.  20 Ill. Adm. Code §504.80(j) (Conway Greene CD-ROM June 2001); see also 
Hamilton
, 976 F.2d at 346 (in a section 1983 action, court reviewed record to determine whether any evidence would support revocation of good-time credits).  Plaintiff has at least alleged specific duties which he was entitled to have performed.       

The suggestion that dismissal of a case for failure to state a cause of action is a way to summarily terminate litigation is mistaken.  Rulings on motions to dismiss generally do not dispose of actions; the courts allow plaintiffs an opportunity to amend their complaints unless it becomes apparent that no set of facts could be pleaded that would entitle a plaintiff to recover.  
Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor
, 295 Ill. App. 3d 567, 575-76, 692 N.E.2d 812, 819 (1998).  Even if the plaintiff has sought the wrong remedy, where a motion directed to the pleadings is granted "the court shall permit the pleadings to be amended."  735 ILCS 5/2-617 (West 2000).  

In 1994, this court concluded that it had no creative solution to the problem of increasing inmate litigation.  
West
, 262 Ill. App. 3d at 557-58, 634 N.E.2d at 1265; see also 
Whitlock
, 153 F.3d at 387 ("growth in the number of prisoners obviously cuts both ways").  The legislature has some options, such as the procedure it has enacted for the summary dismissal of post-conviction petitions, when "the court determines the petition is frivolous or is patently without merit."  725 ILCS 5/122-2.1(a)(2) (West 2000).  The federal government has enacted the Prison Litigation Reform Act of 1995 (Pub. Law 104-134, 110 Stat. 1321-71, 42 U.S.C. §1997e(a) (Supp. 1996); see 
Dixon v. Page
, 291 F.3d 485, 488 (7th Cir. 2002).  Some states provide for judges to sit on a regular basis at the state's correctional facilities.  
Preiser
, 411 U.S. at 492, 36 L. Ed. 2d at 452, 93 S. Ct. at 1837.  The legislature has provided for revocation or reduction of good-time credit for prisoners filing frivolous lawsuits against DOC or others.  730 ILCS 5/3-6-3(d) (West 2000).  We, however, are not the legislature.  Dismissing every lawsuit where an inmate complains of the results of disciplinary hearings, throwing the good cases out with the bad, does not appear to be a satisfactory solution.