KENNETH THOMPSON, Petitioner-Appellee, v. MICHAEL P. LANE, Director, Department of Corrections, *et al.*, Respondents-Appellants.—JOHN L. CROOM, Petitioner-Appellee, v. MICHAEL P. LANE, Director, Department of Corrections, *et al.*, Respondents-Appellants.

Fourth District   Nos. 4—89—0186, 4—89—0266 cons.

Opinion filed February 22, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellants.

Kenneth Thompson, of Menard, appellee *pro se*.

John L. Croom, of Menard, appellee *pro se*.

JUSTICE STEIGMANN delivered the opinion of the court:

This consolidated appeal involves two petitioners, Kenneth Thompson and John Croom, both inmates at the Pontiac Correctional Center (Pontiac), and their challenge to procedures used by the named respondents on behalf of the Illinois Department of Corrections (DOC) in revoking good-time credit. DOC appeals from judgments of the trial court (1) denying its motions to dismiss petitioners' petitions for writ of *mandamus*, and (2) ordering DOC to conduct a rehearing of

the inmate disciplinary reports, or in the alternative, to restore petitioners' lost good time and demotion in grade. On appeal, DOC argues that (1) the revocation of petitioners' good-time credit complied with the requirements of due process, and (2) there was some evidence in the record supporting the revocation of petitioners' good-time credit.

We disagree and affirm.

On October 16, 1987, Thompson was issued a prison disciplinary report charging him with assault, gang activity, and conspiracy to commit murder. The charges related to the murder of Superintendent Robert Taylor, which occurred on September 3, 1987, at Pontiac, and were based on an investigation report which revealed that Thompson was the exercise coordinator of the Black Gangster Disciples (Disciples) on September 3, 1987, when he attended meetings held in the south yard with other members of the Disciples during July and August, where plans were made to attack Taylor. The ticket further indicated that additional information could be obtained under a specified case number from the office of Inspections and Audits Internal Investigations.

On October 21, 1987, the Adjustment Committee (Committee) met and found Thompson guilty of the charges cited in the disciplinary report. Thompson appeared at the hearing, but refused to remain to address or deny the charges. Thompson claimed that the hearing was not being conducted in a private setting. The Committee's summary indicated that the Committee reached its finding of guilt for the following reasons:

> "Based upon the statement by reporting employee; and from resident's refusal to stay for the hearing to address and or to deny the charges; from investigative report that revealed Thompson A 74160 was an active member of the Black Gangster Disciples, that he did participate in meetings that discussed the planning and the attack on Robert Taylor; committee is satisfied that violations did occur."

The Committee revoked 360 days of Thompson's good time, demoted him to C grade for 360 days, and ordered him placed in segregation for 360 days. Thereafter, Thompson filed a grievance and appeared before the Administrative Review Board (Board) on January 21, 1988. The Board concurred with the Committee's finding.

On September 19, 1988, Thompson filed a petition for writ of *mandamus*, alleging that DOC denied him due process at the Committee hearing and seeking restoration of 360 days of good-time credit. Specifically, Thompson alleged that DOC failed to follow its own rules in the preparation of Thompson's disciplinary report and in the con-

duct of the Committee hearings.

DOC moved to dismiss Thompson's petition, arguing that the hearing complied with due process. Thompson filed a response in opposition to DOC's motion, contending that the advance written notice of the charges given by DOC was deficient, the hearing was not conducted in an area of the facility offering him privacy, and the summary report of the Committee did not sufficiently inform him of the Committee's basis for finding him guilty.

The court denied DOC's motion to dismiss. The court held that the hearing on October 21, 1987, did not meet minimum due process requirements because it did not afford Thompson any opportunity to challenge the disciplinary report. The court held that Thompson "was not furnished with the most fundamental of information concerning the charges, specifically, who his accusers were, times, dates and places, and his alleged involvement in said plots and discussions." The court ordered DOC to conduct a rehearing or, in the alternative, to restore to Thompson 360 days of lost good time and loss of grade. The court further ordered that in the event DOC conducts a rehearing, DOC must advise Thompson in writing of the hearing more than 10 days prior to the hearing and must inform him of the specific dates, times, location, and persons attending the meetings.

Croom, also an inmate at Pontiac, was issued a disciplinary ticket on October 16, 1987, charging him with assault, gang activity, and conspiracy to commit murder. The ticket stated that Croom was the assistant exercise coordinator for the Disciples and that during the months of July and August, Croom attended meetings with other Disciples in the south yard, where plans were discussed and made to attack Taylor. Croom's report also stated that additional information could be obtained from the same office of Inspections and Audits Internal Investigations under the same case number.

On October 21, 1987, the Committee found Croom guilty of the charges cited in his disciplinary report. Croom appeared at the hearing, but made no comments other than stating he was not guilty. The Committee's summary report indicated that the Committee reached its finding of guilt for the following reasons:

> "Based upon the statements by reporting employee and from investigative reports that reveal that Croom N 40345 was the assistant coordinator of exercise for the BGD's and did attend meetings on the south yard that did discuss the planning and attack of Robert Taylor; committee is satisfied he was a participant and did commit the violations. Resident has a past history of similar offense."

The Committee revoked 360 days of Croom's good-time credit, demoted him to C grade for 360 days, and ordered him placed in segregation for 360 days.

Subsequently, on November 12, 1987, Croom filed a grievance with the Pontiac Inquiry Board, complaining that the Committee refused to show him evidence concerning the incident. The Inquiry Board concluded that Croom's grievance was without foundation. Thereafter, Croom brought the issue to the Administrative Review Board on February 17, 1988. The Board concurred with the findings of the Committee.

On January 26, 1989, Croom filed a petition for a writ of *mandamus* alleging, as Thompson alleged in his petition, various due process violations. DOC moved to dismiss Croom's petition, asking the court to accept the same arguments that DOC made in Thompson's case. The court denied DOC's motion, adopting the ruling it made in Thompson's case that DOC violated due process.

On appeal, DOC contends that the procedures used in conducting the prison disciplinary proceedings complied with due process. Specifically, DOC maintains these procedures conformed to requirements set forth in *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.

■ In *Wolff*, the United States Supreme Court held that an inmate must receive the following: (1) advance written notice of the disciplinary charges at least 24 hours prior to the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564-66, 41 L. Ed. 2d at 956-57, 94 S. Ct. at 2978-79.

With respect to the first requirement set forth in *Wolff*—that inmates must receive advance written notice of the disciplinary charges at least 24 hours prior to the hearing—DOC argues that it was met on October 16, 1987, when petitioners received disciplinary tickets. DOC maintains that the tickets complied with due process requirements in that the tickets informed petitioners of the specific charges against them and cited the specific disciplinary rules that formed the basis of the charges.

Petitioners argue they should have received a more detailed notice of the charges pending against them. They contend the notice they received was so general that it was difficult for them to prepare any defense.

■ Initially, we note that section 3—6—3(c) of the Unified Code

of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1003—6—3(c)) provides for the DOC to prescribe rules and regulations for the revocation of good-conduct credit, and one such regulation is section 504.30(c) of the Illinois Department of Corrections rules, as stated in the Illinois Administrative Code (Code) (20 Ill. Adm. Code §504.30(c) (1985)). Section 504.30(c) states in pertinent part:

> "The Disciplinary Report *must* be fully completed. The reporting employee shall provide the following information to the extent known or available.
>
> \*\*\*
>
> (2) The place, time and date of the offense.
>
> \* \* \*
>
> (5) The names of all committed persons, employees and visitors who were witnesses." (Emphasis added.) (20 Ill. Adm. Code §504.30(c) (1985).)

DOC is required to follow its own regulations. *People ex rel. Yoder v. Hardy* (1983), 116 Ill. App. 3d 489, 495, 451 N.E.2d 965, 969; *Taylor v. Franzen* (1981), 93 Ill. App. 3d 758, 761, 417 N.E.2d 242, 244.

The ticket issued to Thompson read as follows:

> "INMATE KENNETH THOMPSON A 74160 is to be charged with the above violations for his involvement [in] the MURDER of ROBERT TAYLOR that occurred on September 3, 1987 in the South Cell House, the investigation revealed that Thompson was the exercise coordinator on September 3, 1987 and during the months of July and August 1987 when he attended meetings held on the South Yard with other members of the BLACK GANGSTER DISCIPLES, at these meeting[s] it was discussed and plans made to ATTACK ROBERT TAYLOR which occurred on September 3, 1987 and the result being the death of ROBERT TAYLOR, the investigation revealed that THOMPSON was involved with these acts[.] [A]ny additional information needed contact the office of Inspections and Audits Inter[nal] Investigations, refer to case number 88 PON 041 for additional information."

Croom's ticket read:

> "INMATE JOHN CROOM N 40345 is to be charged with the above violations for his involvement [in] the MURDER of ROBERT TAYLOR that occurred on September 3, 1987 in the South Cell House, the investigation was able to reveal that CROOM is and was the Assistant Exercise Coordinator for the BLACK GANGSTER DISCIPLE ORGANIZATION and during the months of July and August CROOM did attend meetings

with other BGD's in the South yard where plans were discussed and made to attack ROBERT TAYLOR and this attack did occur on September 3, 1987 and resulted in his death, additional information can be obtained from the office of Inspections and Audits Internal Investigations, refer to case number 88 PON 041 for this information."

Information required by section 504.30(c) of DOC rules to be included was left out. Specifically, according to section 504.30(c), to the extent known or available, petitioners should have been informed who their accusers were, as well as the approximate times, dates, and places of the alleged infractions.

■ Prisoners are not afforded all of the rights and privileges guaranteed to other citizens. (*Wolff*, 418 U.S. at 555, 41 L. Ed. 2d at 950, 94 S. Ct. at 2974.) The rights they enjoy are flexible and subject to limitation. It is therefore necessary to balance the need for efficient and secure prisons against petitioners' rights to be protected against unwarranted losses of liberty. Prison officials must have broad discretion in structuring and operating the prison disciplinary system. A court should not meddle in prison affairs unless legitimate constitutional issues are raised that require intervention. *Redding v. Fairman* (7th Cir. 1983), 717 F.2d 1105, 1112.

While some of the additional information required by section 504.30(c) of DOC rules might have been lethal, other information might have been "safe." For example, revealing the names of the informants might have led to the death or serious injury of some or all of the informants. Thus, any benefit to petitioners, substantial as it might have been, to being provided with the names of witnesses *might* have been outweighed by the costs associated with providing this additional information. But, the approximate times, dates, and places of the alleged meetings in furtherance of the conspiracy to murder Taylor are examples of additional information that might have been "safe."

DOC cites two decisions of the Seventh Circuit Court of Appeals as supporting its position that it need not furnish petitioners with the names of witnesses, but we believe these cases are factually distinguishable. In *Dawson v. Smith* (7th Cir. 1983), 719 F.2d 896, 897, the ticket served on the inmate asserted that he planned to escape from the United States Penitentiary at Terre Haute and then stated the following: "The source of this information is considered to be reliable and will remain CONFIDENTIAL to ensure the orderly running of the institution." (Capitalization in original.) In *McCollum v. Miller* (7th Cir. 1982), 695 F.2d 1044, 1045, the ticket alleged that the inmate

pressured other inmates to give him money and to perform homosexual acts with him and asserted that the basis of this information was "various confidential sources."

■ Citing these cases and *Mendoza v. Miller* (7th Cir. 1985), 779 F.2d 1287, DOC claims that prison inmates need not be provided with the names of confidential sources or information where to do so would jeopardize the well-being of other individuals or institutional safety. We agree but point out that nowhere in the ticket of either petitioner is there a claim by DOC that the information being requested by the petitioners is being withheld for any such reason. Given the careful balancing of important competing interests at issue, we decline to *presume* that the safety of individuals or the institution is DOC's basis for refusing to provide the information requested to the petitioners. Based on this record, that refusal could simply be premised upon the use of arbitrary authority. In sum, we hold that if DOC wishes to rely on such safety concerns, it is required to say so on the inmate's ticket.

DOC also argues that the second requirement of *Wolff*—that the inmate must receive an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense—was met. DOC contends that both petitioners were given an opportunity to call witnesses and present documentary evidence, but that neither chose to exercise this right. In further support of this argument, DOC claims that neither petitioner even requested the production of witnesses.

In view of our resolution of this case based upon our analysis of the first and third requirements of *Wolff*, as well as the applicable DOC regulations, we need not address this issue.

■ Last, DOC argues that the third requirement set forth in *Wolff*—that an inmate must receive a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action—was also satisfied. Respondents maintain that in informing petitioners of the charges and considering the evidence, the Committee, in its summaries, found petitioners guilty and stated in writing the reasons for those findings. Petitioners argue that the summaries contained no evidence to support the Committee's findings of guilt.

Thompson's Committee summary read as follows:

> "Based upon the statement by reporting employee; and from resident's refusal to stay for the hearing to address and or deny the charges; from investigative report that revealed Thompson A 74160, was an active member of the Black Gangster Disciples, that he did participate in meetings that dis-

cussed the planning and the [attack] on Robert Taylor; Committee is satisfied that violations did occur."

Croom's Committee summary read as follows:

"Based upon the statements by reporting employee and from investigative reports that reveal that Croom N 40345 was the assistant coordinator of exercise for the BGD's and did attend meetings on the south yard that did discuss the planning and attack of Robert Taylor; committee is satisfied he was a participant and did commit the violations. Resident has a past history of similar offense."

Section 504.80(k)(1) of the DOC rules, as set forth in the Code, states:

"All evidence submitted, including all oral and written statements, shall be summarized in the written record prepared by the Committee. The Committee members shall specifically refer to the evidence which convinced them to decide the committed person did or did not commit the offense." (20 Ill. Adm. Code §504.80(k)(1), at 1963 (1985).)

This requirement is not to be taken lightly. (*Redding*, 717 F.2d at 1114.) In fact, the United States Supreme Court has stated:

"Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements." (*Wolff*, 418 U.S. at 565, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979.)

General findings of the sort used here, merely incorporating the disciplinary report and the special investigator's report, do not comply with either *Wolff* or DOC's own rules. Nor will this type of finding protect the inmate against subsequent collateral effects based on a possible misunderstanding of the initial decision. *Redding*, 717 F.2d at 1114.

DOC argues, however, that the relevant inquiry is whether there is *some evidence* in the record that could support the conclusion reached by the Committee (*Superintendent v. Hill* (1985), 472 U.S. 445, 86 L. Ed. 2d 356, 105 S. Ct. 2768) and maintains that the Committee's summaries meet that standard. DOC claims those summaries contain some evidence in that they were premised on investigative reports which revealed that Thompson and Croom were active members

of the Disciples and participated in meetings held in the south yard in the months of July and August, where plans were formed to attack Taylor.

■ We find, however, that to satisfy minimum due process requirements, a statement of reasons should be sufficient to enable a reviewing body to determine whether good-time credit has been revoked for an impermissible reason or for no reason at all. While *detailed* findings are *not* required, something beyond mere conclusory statements is required.

■ Here, the Committee failed to give an adequate statement as to the evidence relied on or the reasons for the action taken. Rather than pointing out the essential facts upon which inferences were based, the Committee merely made reference to the disciplinary report and the special investigator's report.

For the foregoing reasons, the order of the circuit court of Livingston County denying DOC's motion to dismiss petitioners' petitions for writ of *mandamus* and ordering DOC to conduct a rehearing of the inmate disciplinary reports, or in the alternative, to restore petitioners' lost good-time credits and demotion in grade, is affirmed.

Affirmed.

McCULLOUGH and SPITZ, JJ., concur.