NO. 4-03-0940

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

WILLIAM CANNON, JR.,

Plaintiff-Appellant,

v.

TROY QUINLEY, ROGER WALKER, CLETUS R. SHAW, RICHARD L. ROBINSON, STEPHEN D. MOTE, and DONALD N. SNYDER, JR.,

Defendants-Appellees.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Livingston County

No. 03MR109

Honorable

Harold J. Frobish,

Judge Presiding.

______________________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In September 2003, plaintiff, William Cannon, Jr., 
filed a 
pro
 
se
 petition for writ of 
mandamus
 relief, alleging that defendants, Stephen D. Mote, warden of the Pontiac Correctional Center; Troy Quinley, a Pontiac correctional officer superintendent; Donald N. Snyder, Jr., the Director of the Department of Corrections (DOC); and DOC employees Roger Walker and Cletus R. Shaw, failed to follow DOC rules and violated his due process rights during September, October, and November 2002 disciplinary proceedings.  One day later, the trial court 
sua
 
sponte
 dismissed Cannon's petition for failure to state a cause of action.  Cannon appeals; and we affirm in part, reverse in part, and remand for further proceedings.

I. BACKGROUND

A. September 11, 2002, Inmate Disciplinary Report

On September 11, 2002, DOC cited Cannon, who was then an inmate at Pontiac, in an inmate disciplinary report (IDR).  The IDR, which was written by DOC correctional officer Michael Burger, indicated that around noon on September 11, 2002, Burger observed Cannon standing inside his cell at his door yelling.  Burger told Cannon that he was going to issue an IDR because Cannon was violating a January 1, 2002, written memorandum from Quinley prohibiting excessive noise.  Cannon responded by yelling, "Burger[,] you're a white racist mother fucking honkie!  I don't care about a fucking ticket you white racist mother fucker!"  The IDR charged Cannon with (1) willfully disobeying a facility rule (DOC Rule 404)--namely, the excessive-noise memorandum, and (2) insolence (DOC Rule 304).  See 20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003).  

A DOC correctional officer served Cannon with the IDR later on September 11, 2002.  Cannon signed the IDR and wrote "Lt. Punke" on the witness-request form at the bottom of the IDR.  However, he did not complete the section on the witness-request form indicating the matter about which the witness could testify. 

On September 17, 2002, an adjustment committee conducted a disciplinary hearing on the charges alleged in the IDR. Cannon appeared and denied the charges.  After considering the evidence, the committee found Cannon guilty of both charges.  The committee's written final summary report indicated that the committee based its finding of guilt on the following:  (1) Burger's observation that (a) Cannon was yelling in his cell and (b) Cannon called Burger a "racist mother fucking honkie" when Burger told him that he would issue the IDR; (2) Cannon was positively identified by "gallery chart"; and (3) Cannon had previously been found guilty of insolence (DOC Rule 304) (see 20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003)).  The final summary report also indicated that the committee denied Cannon's request to have correctional officer Punke appear as a witness because his testimony would have been irrelevant as he was not present during the September 11, 2002, incident.      

The committee recommended imposition of one month of disciplinary segregation, three months' demotion to C-grade status, and revocation of three months of commissary and "audio/visual" privileges.  The chief administrative officer later imposed the recommended disciplinary actions. 

B. September 29, 2002, IDR

On September 29, 2002, DOC cited Cannon in another IDR.  The IDR, which was written by Burger, indicated that around noon on September 29, 2002, Burger, who was standing near the bottom of tower 19, observed Cannon standing inside his cell at his door yelling to another inmate.  The IDR charged Cannon with willfully disobeying a facility rule (DOC Rule 404)--namely, the January 1, 2002, excessive-noise memorandum.  See 20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003).  

A DOC correctional officer served Cannon with the IDR later on September 29, 2002.  Cannon did not sign the IDR or complete the witness-request form at the bottom of the IDR.     

On October 3, 2002, an adjustment committee conducted a disciplinary hearing on the charge alleged in the IDR.  Cannon appeared and denied the charge.  He also submitted a written statement, indicating, in pertinent part, that (1) he was not guilty; (2) Burger could not see Cannon behind his cell door, which had a perforated opening, from where Burger stood in the lower tower; (3) Burger had fabricated the charge in retaliation for Cannon's filing prior grievances against him; (4) Cannon had never been issued the January 1, 2002, excessive-noise memorandum; and (5) "there [was] no official rule related to noise."  After considering the evidence, the committee found Cannon guilty of the charge.  The committee's written final summary report indicated that the committee based its finding of guilt on the following:  (1) Burger's observation that Cannon was standing at his cell door yelling; (2) Cannon was positively identified by face and name; and (3) Cannon had previously been found guilty of willfully disobeying a facility rule (DOC Rule 404) (see 20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003)).        

The committee recommended imposition of one month of disciplinary segregation, one month's demotion to C-grade status, and revocation of one month of commissary and "audio/visual" privileges.  The chief administrative officer later imposed the recommended disciplinary actions. 

C. November 5, 2002, IDR  

On November 5, 2002, DOC cited Cannon in a third IDR.  The IDR, which was written by Burger, indicated that around noon on November 5, 2002, Burger, who was standing near the bottom of tower 20, had the "WCH cage turn on count lights" and observed Cannon standing inside his cell at his door yelling to another inmate.  The IDR also indicated that Cannon was identified by "WCH cage."  The IDR charged Cannon with willfully disobeying a facility rule (DOC Rule 404)--namely, the January 1, 2002, excessive-noise memorandum.  See 20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003).  

A DOC correctional officer served Cannon with the IDR later on November 5, 2002.  Cannon did not sign the IDR or complete the witness-request form at the bottom of the IDR.     

On November 7, 2002, an adjustment committee conducted a disciplinary hearing on the charge alleged in the IDR.  Cannon appeared and denied the charge.  He also submitted a written statement, indicating, in pertinent part, that (1) he was not guilty; (2) "if you will go to [the] bottom of tower 19 and ask [Cannon] to come to [his cell] door, you will not be able to see [Cannon]"; (3) Burger had fabricated the charge in retaliation for Cannon's filing prior grievances against him; and (4) Cannon had never been issued the January 1, 2002, excessive-noise memorandum even though he had inquired about it.  After considering the evidence, the committee found Cannon guilty of the charge.  The committee's written final summary report indicated that the committee based its finding of guilt on the following:  (1) Burger's observation that Cannon was standing at his cell door yelling and (2) the positive identification of Cannon by "WCH cage."

The committee recommended imposition of one month of disciplinary segregation, one month's demotion to C-grade status, and revocation of one month of commissary and "audio/visual" privileges.  The chief administrative officer later imposed the recommended disciplinary actions. 

D. Cannon's Grievance

Later in November 2002, Cannon filed a grievance as to the disciplinary proceedings regarding the September 11, 2002, September 29, 2002, and November 5, 2002, IDRs, alleging, in pertinent part, as follows:  (1) Burger had fabricated the charges against him; (2) the adjustment committee failed to (a) state its reasons for disregarding his exonerating evidence, (b) consider all relevant material, and (c) call his requested witness; (3) he never received the January 1, 2002, excessive-noise memorandum or noise-level guidelines; and (4) DOC did not properly promulgate a rule prohibiting certain noise levels.      

In December 2002, a grievance officer recommended that Cannon's grievance be denied, upon determining that (1) the committee complied with DOC Rule 504 (20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003)), and provided Cannon with due process during the disciplinary proceedings and (2) the grievance officer was reasonably sure that Cannon committed the charged offenses.  Later that month, the chief administrative officer concurred in the grievance officer's recommendation.

Cannon later appealed the chief administrative officer's decision.  In March 2003, the administrative review board and the DOC Director denied Cannon's grievance.  

E. Cannon's Petition for Writ of 
Mandamus
    

In September 2003, Cannon
 filed a 
pro
 
se
 petition for 
mandamus
 relief, alleging, in pertinent part, that (1) he did not receive a copy of the January 1, 2002, excessive-noise memorandum until after being issued the November 5, 2002, IDR; (2) no noise-level guidelines were ever issued to Cannon or other inmates; (3) DOC did not properly promulgate a rule prohibiting certain noise levels; (4) the adjustment committee disregarded Cannon's exonerating evidence without stating its reasons for doing so; (5) the committee failed to (a) review and consider all relevant material, (b) provide staff assistance to investigate his defense that Burger, when standing at tower 19, could not see Cannon standing inside his cell, (c) call his requested witness, and (d) state the reasons for recommending the disciplinary action against Cannon; and (6) the committee's findings were not sufficiently detailed.  Attached to Cannon's petition, in pertinent part, were the following:  (1) copies of the IDRs written by Burger; (2) Cannon's written statements presented at the October and November 2002 disciplinary hearings; (3) the committee's final written summary reports; (4) Cannon's grievance; (5) the grievance officer's report; (6) the board's and the DOC Director's denial of Cannon's grievance; (7) copies of three previous adjustment committee final written summary reports regarding IDRs issued to other inmates, in which the IDRs were expunged because correctional officers could not see inside cells from their vantage points; (8) a copy of a prior adjustment committee final written summary report regarding an IDR issued to Cannon when he was previously in east cell house, which indicated that the east cell house policy was that "catwalk staff" must have a witness for noise-violation offenders who are housed behind doors with perforated openings; and (9) a copy of the January 1, 2002, excessive-noise memorandum, which was addressed to inmates in the west cell house and stated, in pertinent part, that "[i]nmates who do not comply with the noise[-]level guidelines will be issued [IDRs] and progressive discipline will be rendered."

On September 26, 2003, one day after Cannon filed his 
mandamus
 petition, the trial court dismissed it
 in a docket entry, which states, 
in
 
its
 
entirety
, as follows:

"Court reviews 
[m]andamus
 petition and pertinent documents.  Court finds that [Cannon] complains about the result of certain disciplinary proceedings and has failed to state a cause of action in 
mandamus
.  Therefore, the petition is dismissed for failure to state a cause of action." 

In October 2003, Cannon filed a motion to reconsider, which the court later denied.  This 
pro
 
se
 appeal followed.

II. ANALYSIS

A. Trial Courts' Authority To 
Sua
 
Sponte
 

Dismiss 
Mandamus
 Petitions

"
Mandamus
 relief is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public official where the official is not exercising discretion.  A court will not grant a writ of 
mandamus
 unless the petitioner can demonstrate a clear, affirmative right to relief, a clear duty of the official to act, and clear authority in the official to comply with the writ.  The writ will not lie when its effect is to substitute the court's judgment or discretion for the official's judgment or discretion.  
Mandamus
 relief, therefore, is not appropriate to regulate a course of official conduct or to enforce the performance of official duties generally."  
Hatch v. Szymanski
, 325 Ill. App. 3d 736, 739, 759 N.E.2d 585, 588 (2001).

In addition, the United States Supreme Court has held that under the principles of due process, prisoners are entitled to the following process in disciplinary proceedings:  (1) notice of the disciplinary charges at least 24 hours prior to the hearing; (2) when consistent with institutional safety and correctional goals, an opportunity to call witnesses and present documentary evidence in their defense; and (3) a written statement by the fact finder of the evidence relied on in finding the prisoner guilty of committing the offense and the reasons for the disciplinary action.  
Wolff v. McDonnell
, 418 U.S. 539, 563-66, 41 L. Ed. 2d 935, 955-56, 94 S. Ct. 2963, 2978-79 (1974).  

In 
Mason v. Snyder
, 332 Ill. App. 3d 834, 842, 774 N.E.2d 457, 463-64 (2002), this court held that trial courts have the authority to "utilize their discretion in dealing with 'professional litigants' who inappropriately burden the court system with nonmeritorious litigation" by 
sua
 
sponte
 striking 
mandamus
 petitions that the courts find to be "frivolous and without merit."  "Frivolous" has been defined as "of little weight or importance:  having no basis in law or fact" (Webster's Third New International Dictionary 913 (1981)), and "[l]acking a legal basis or legal merit" (Black's Law Dictionary 677 (7th ed. 1999)); accord 
Anders v. California
, 386 U.S. 738, 744, 18 L. Ed. 2d 493, 498, 87 S. Ct. 1396, 1400 (1967) (legal points "arguable on their merits" are not frivolous).  "Merit" means "legal significance, standing, or importance."  Webster's Third New International Dictionary 1414 (1981).  Thus, a trial court should 
sua
 
sponte
 dismiss a 
mandamus
 petition only if it clearly has no basis or merit in law or fact.  A trial court should not 
sua
 
sponte
 dismiss a petition if the claims therein are arguable on their merits.  We review 
de
 
novo
 the trial court's 
sua
 
sponte
 dismissal of Cannon's petition for failure to state a cause of action.  See 
People ex rel. Ryan v. Telemarketing Associates, Inc.
, 198 Ill. 2d 345, 351, 763 N.E.2d 289, 293 (2001) (we review 
de
 
novo
 a trial court's dismissal of a complaint for failure to state a cause of action).

B. The Trial Court's 
Sua
 
Sponte
 Dismissal 

of Cannon's 
Mandamus
 Petition

Cannon argues that the trial court erred by 
sua
 
sponte
 dismissing his petition for writ of 
mandamus
 because his petition included several claims that stated a cause of action.  For the reasons discussed below, we agree that the court erred by 
sua
 
sponte
 dismissing Cannon's claims that (1) he did not receive notice of the excessive-noise-level guidelines, (2) the adjustment committee failed to state its reasons for recommending the disciplinary action, (3) the committee failed to state its reasons for disregarding certain exonerating evidence, and (4) the committee failed to consider all relevant information and evidence. 

1. 
Claims
 
That
 
the
 
Trial
 
Court
 
Erroneously
 
Dismissed
  

a. Cannon's Claim That DOC Violated His Due Process 

Rights by Failing To Issue Excessive-Noise-Level 

Guidelines to Him

Cannon first contends that DOC violated his due process rights by failing to issue any excessive-noise-level guidelines to him prior to enforcing them.  He thus claims that prior to being issued the September 11, 2002, September 29, 2002, and November 5, 2002, IDRs, he did not know what noise levels were prohibited.

Due process requires that inmates receive fair notice of prohibited conduct before they can be sanctioned for engaging in the conduct.  
Forbes v. Trigg
, 976 F.2d 308, 314 (7th Cir. 1992); see 
Coffman v. Trickey
, 884 F.2d 1057, 1060 (8th Cir. 1989) ("It is beyond cavil that this [due process] principle applies within the prison setting").  

In this case, Cannon's petition raised a factual allegation, which if proved true, would establish a violation of his due process rights.  Thus, we reverse the trial court's 
sua
 
sponte
 dismissal of this claim.  See 
Armstrong v. Snyder
, 336 Ill. App. 3d 567, 571, 783 N.E.2d 1101, 1104 (2003) (an allegation of a due process rights violation states a cause of action in 
mandamus
).  In so doing, we are not suggesting that this claim may not be the proper subject of dismissal or denial in further proceedings. 

b. Cannon's Claim That the Adjustment Committee Failed 

To State Its Reasons for Recommending the 

Disciplinary Action as to the Three IDRs

Cannon also contends that the adjustment committee violated his due process rights and DOC rules by failing to state its reasons for recommending the disciplinary action in its September 17, 2002, October 3, 2002, and November 7, 2002, written final summary reports. 

As earlier stated, 
Wolff
 requires that an inmate subject to discipline receive the fact finder's written statement of the reasons for the disciplinary action.  
Wolff
, 418 U.S. at 564, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979.  In addition, DOC Rule 504.80(
l
)(3) provides that a "written record shall be prepared and signed by all members of the [c]ommittee that contains," among other things, "the disciplinary action recommended, and the reasons for recommending the disciplinary action."  20 Ill. Adm. Code §504.80(
l
)(3) (Conway Greene CD-ROM June 2003).  

Cannon's petition alleged that he was never informed of the reasons for the recommended disciplinary action, as is required by (1) DOC Rule 504.80(
l
)(3) and (2) the United States Constitution.  Attached to his petition were the adjustment committee's three final written summary reports.  Those reports contain (1) stated reasons for finding that Cannon was guilty of the charges and (2) the disciplinary action the committee had recommended.  However, they do not contain the committee's reasons for recommending the disciplinary action.  On this record, we fail to see how Cannon's petition fails to state a cause of action for 
mandamus
 relief or is otherwise clearly frivolous.  We thus reverse the trial court's 
sua
 
sponte
 dismissal of this claim.  See 
Armstrong
, 336 Ill. App. 3d at 571, 783 N.E.2d at 1104 (an allegation of a violation of due process rights and DOC rules in a prison disciplinary proceeding states a cause of action in 
mandamus
).  As we stated above, in so doing, we are not suggesting that this claim may not be the proper subject of dismissal or denial in further proceedings.        

c. Cannon's Claim That the Adjustment Committee Failed To State the Reasons for Disregarding His Exonerating Evidence

Cannon also contends that the adjustment committee failed to comply with DOC rules when it failed to state its reasons for disregarding his exonerating evidence, as required by DOC Rule 504.80(
l
)(2) (20 Ill. Adm. Code §504.80(
l
)(2) (Conway Greene CD-ROM June 2003)).  Specifically, he asserts that the committee failed to state its reasons for disregarding his defense that from tower 19, Burger could not possibly see Cannon's face or mouth as Cannon stood at his cell door.

DOC Rule 504.80(
l
)(2) provides that "[i]f exonerating evidence is presented and disregarded, the [c]ommittee must state the basis for disregarding the evidence."  20 Ill. Adm. Code §504.80(
l
)(2) (Conway Greene CD-ROM June 2003).

Cannon's petition alleged that the adjustment committee failed to state its reasons for disregarding the exonerating evidence regarding Burger's ability to see him, as is required by DOC Rule 504.80(
l
)(2).  Attached to his petition were (1) Cannon's written statements that he presented at the October 3, 2002, and November 7, 2002, disciplinary hearings, which indicated that because Cannon's cell door had a perforated opening, Burger could not see Cannon standing at the door of his cell from Burger's vantage point in tower 19 (Cannon conceded that the September 29, 2002, IDR mistakenly indicated that Burger's vantage point was tower 20 (not tower 19) because tower 20 was "on the other side of the building"); (2) the committee's October 3, 2002, final written summary report, which (a) does not indicate that Cannon's written statement raised the defense that Burger could not see him from Burger's vantage point and (b) does not state the committee's basis for disregarding the evidence; (3) the committee's November 7, 2002, final written summary report, which indicates that Cannon's written statement raised the defense that Burger could not see Cannon from Burger's vantage point but does not explicitly state the committee's basis for disregarding that evidence; (4) copies of three previous adjustment committee final written summary reports regarding IDRs issued to other inmates, in which the IDRs were expunged because correctional officers could not see inside cells from their vantage points; and (5) a copy of a prior adjustment committee final written summary report regarding an IDR issued to Cannon when he was in east cell house, which indicated that the east cell house policy was that "catwalk staff" must have a witness for noise-violation offenders who are housed behind doors with perforated openings.           

 On this record, we fail to see how Cannon's petition fails to state a cause of action for 
mandamus
 relief or is otherwise clearly frivolous.  We thus reverse the trial court's 
sua
 
sponte
 dismissal of this claim.  As we stated above, in so doing, we are not suggesting that this claim may not be the proper subject of dismissal or denial in further proceedings.  

2. 
Claims
 
That
 
the
 
Trial
 
Court
 
Properly
 
Dismissed

a. Cannon's Claim That DOC Failed To Abide by Statutory Law Requiring the Promulgation of Agency Rules

Cannon contends that DOC failed to promulgate an agency rule prohibiting excessive noise prior to enforcing it.  We disagree.

Cannon correctly points out that section 5-10(c) of the Illinois Administrative Procedure Act (Act) provides that "[n]o agency rule is valid or effective against any person or party *** until it has been made available for public inspection and filed with the Secretary of State as required by this Act" (5 ILCS 100/5-10(c) (West 2002)).  See also 2 Ill. Adm. Code §850.120 (Conway Greene CD-ROM June 2003) (discussing the procedure for adopting DOC rules under the Act).  However, the agency (DOC) rule that Cannon was charged with violating in the IDRs--namely, DOC Rule 404 (violation of facility rules)--was properly promulgated.  Rule 404 proscribes an inmate's "[w]illfully disobeying any 
rule
 
of
 
the
 
facility
" (emphasis added) (20 Ill. Adm. Code §504 app. A (Conway Greene CD-ROM June 2003)).  The Act simply does not require that a rule of a particular correctional facility--as opposed to a DOC rule--be promulgated in accordance with the Act.  Thus, the record does not support Cannon's claim that DOC failed to promulgate an agency rule prohibiting excessive noise prior to enforcing it.  Accordingly, the trial court did not err by 
sua
 
sponte
 dismissing this claim.          

b. Cannon's Claim That the Adjustment Committee Violated His Due Process Rights by Failing To Call His Requested Witness 

Cannon also contends that the adjustment committee violated his due process rights by failing to call his requested witness, correctional officer Punke, at the September 17, 2002, disciplinary hearing.  We disagree. 

DOC rules provide that the "[a]djustment [c]ommittee shall consider any statements of witnesses with relevant knowledge of the incident who are reasonably available."  20 Ill. Adm. Code §504.80(h) (Conway Greene CD-ROM June 2003).  However, the committee may deny witness requests if the witness's testimony would be irrelevant, cumulative, or would jeopardize the safety or disrupt the security of the facility, among other reasons.  20 Ill. Adm. Code §504.80(h)(4) (Conway Greene CD-ROM June 2003).  In addition, 
mandamus
 does not afford a means to challenge or reverse an official's discretionary acts.  
Caruth v. Quinley
, 333 Ill. App. 3d 94, 99, 775 N.E.2d 224, 228 (2002).  

In this case, Cannon wrote "Lt. Punke" on the witness- request form at the bottom of the September 11, 2002, IDR.  However, he did not (1) complete the section on the witness- request form indicating the matter about which Punke could testify or (2) tell the adjustment committee during the disciplinary hearing what Punke could testify about.  In the adjustment committee's September 17, 2002, written final summary report, it indicated that it denied Cannon's request to have Punke appear as a witness because his testimony would be irrelevant as he was not present during the September 11, 2002, incident.  Because the committee's decision to deny Cannon's witness request was a matter within the committee's discretion, Cannon cannot challenge that decision in a 
mandamus
 petition.  See 
Helm v. Washington
, 308 Ill. App. 3d 255, 257, 720 N.E.2d 326, 328 (1999) ("
Mandamus
 is an extraordinary remedy that may be used only to compel a public official or body to perform a ministerial duty in which the official exercises no discretion").  Thus, the trial court did not err by 
sua
 
sponte
 dismissing this claim. 

c. Cannon's Claim That the Adjustment Committee's 

Findings Were Not Sufficiently Detailed 

Cannon also contends that he was denied due process because the adjustment committee's findings were not sufficiently detailed.  We disagree.

As earlier stated, 
Wolff
 requires that an inmate receive the fact finder's written statement of the evidence relied on.  
Wolff
, 418 U.S. at 564, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979.  In addition, DOC Rules 504.80(
l
)(1) and (2) provide, in pertinent part, as follows:  

"A written record shall be prepared and signed by all members of the [c]ommittee that contains:  

(1) A summary of oral and written statements and other evidence presented.

* * * 

(2) If the [c]ommittee members find that the offender committed the offense, a statement as to their reasons for the finding."  20 Ill. Adm. Code §§504.80(
l
)(1), (
l
)(2) (Conway Greene CD-ROM June 2003). 

In 
Thompson v. Lane
, 194 Ill. App. 3d 855, 864, 551 N.E.2d 731, 737 (1990), this court discussed the sufficiency of factual findings in prison disciplinary proceedings and held as follows:

"[T]o satisfy minimum due process requirements, a statement of reasons should be sufficient to enable a reviewing body to determine whether good-time credit has been revoked for an impermissible reason or for no reason at all.  While 
detailed
 findings are 
not
 required, something beyond mere conclusory statements is required."  (Emphasis in original.)  

In 
Thompson
, 194 Ill. App. 3d at 864, 551 N.E.2d at 737, this court affirmed the trial court's dismissal of DOC's motion to dismiss an inmate's petition for writ of 
mandamus
, reasoning, in part, that the committee's conclusory statement of the reasons underlying its disciplinary decision did not comport with due process.  

Here, unlike in 
Thompson
, the adjustment committee did more than simply refer to the IDRs in stating the reasons for its decisions.  The committee's stated reasons for its decisions were sufficient to enable "a reviewing body to determine whether good-time credit has been revoked for an impermissible reason or for no reason at all" and satisfied minimum requirements of due process.  Thus, the record does not support Cannon's allegation that he was denied due process because the committee's findings were not sufficiently detailed.  Accordingly, the trial court did not err by 
sua
 
sponte
 dismissing this claim.   

d. Cannon's Claim That the Adjustment Committee Failed 

To Allow Him To Present a Defense

Cannon also contends that the adjustment committee failed to allow him to present a defense.  Specifically, citing DOC Rule 504.80(i) (20 Ill. Adm. Code §504.80(i) (Conway Greene CD-ROM June 2003)), he asserts that the committee was required to send a DOC staff member to tower 19 to determine whether that staff member could see Cannon's face behind his cell door.  We disagree.

DOC Rule 504.80(i) provides, in pertinent part, that "[t]he offender may request the assistance of a staff member in the preparation and presentation of his or her defense if he or she is illiterate or does not speak English or when other circumstances exist that preclude the individual from adequately preparing his or her defense."  20 Ill. Adm. Code §504.80(i) (Conway Greene CD-ROM June 2003).  Contrary to Cannon's contention, that rule does not require DOC staff members to help an inmate prepare his defense.  Instead, it simply provides that an inmate "may request" such assistance under certain circumstances.  As earlier stated, 
mandamus
 is an extraordinary remedy that may be used only to compel a public body to perform a ministerial duty.  See 
Helm
, 308 Ill. App. 3d at 257, 720 N.E.2d at 328.  Because DOC Rule 504.80(i) does not mandate that DOC staff members assist inmates with their defenses, Cannon cannot challenge the adjustment committee's failure to provide such assistance in a 
mandamus
 petition.  Thus, the trial court did not err by 
sua
 
sponte
 dismissing this claim. 

e. Cannon's Claim That the Adjustment Committee Failed To 

Consider All Relevant Information and Evidence

Cannon also contends that the adjustment committee failed to comply with DOC rules when it failed to (1) decide whether he committed the offense of violating the excessive-noise memorandum "based upon all relevant information and evidence," as required by DOC Rule 504.80(j) (20 Ill. Adm. Code §504.80(j) (Conway Greene CD-ROM June 2003)); and (2) "consider all material presented that is relevant" to the issue of whether he committed the charged offense, as required by DOC Rule 504.80(g) (20 Ill. Adm. Code §504.80(g) (Conway Greene CD-ROM June 2003)).  Specifically, he asserts that the committee failed to consider his defense that from tower 19, Burger could not possibly see Cannon as he stood in front of his cell door.  We disagree.

Cannon's petition alleged that the adjustment committee failed to (1) decide whether he committed the offense of violating the excessive-noise memorandum "based upon all relevant information and evidence," as required by DOC Rule 504.80(j) and (2) consider all relevant material, as required by DOC Rule 504.80(g).  Attached to Cannon's petition were (1) Cannon's written statements that he presented at the October 3, 2002, and November 7, 2002, disciplinary hearings, which indicated that because Cannon's cell door had a perforated opening, Burger could not see him standing at his cell door from Burger's vantage point in tower 19; and (2) the committee's October 3, 2002, and November 7, 2002, final written summary reports, which do not mention Cannon's defense.           

As earlier discussed, the adjustment committee's stated reasons for its decisions were sufficient to enable "a reviewing body to determine whether good-time credit has been revoked for an impermissible reason or for no reason at all" and satisfied minimum requirements of due process.  The mere fact that the committee did not specifically mention in its written findings the information regarding Burger's ability to see Cannon does not mean that the committee failed to consider that information.  We thus conclude that Cannon has failed to state a cause of action in this regard.  Accordingly, the trial court did not err by 
sua
 
sponte
 dismissing this claim.        

f. Cannon's Claim That the Adjustment Committee Acted Arbitrarily

Last, Cannon contends that during the disciplinary proceedings, the adjustment committee acted arbitrarily, not impartially, as required by DOC Rule 504.80(d) (20 Ill. Adm. Code §504.80(d) (Conway Greene CD-ROM June 2003)).  We disagree.

 DOC Rule 504.80(d), upon which Cannon solely relies, provides as follows:

"Any person who initiated the allegations that serve as the basis for the [IDR], or who conducted an investigation into those allegations, or who witnessed the incident, or who is otherwise not impartial shall not serve on the [a]djustment [c]ommittee hearing that [IDR].  An offender who objects to a member of the [c]ommittee based on a lack of impartiality must raise the matter at the beginning of the hearing.  The [c]ommittee shall document the basis of the objection and the decision in the [a]djustment committee summary."  20 Ill. Adm. Code §504.80(d) (Conway Greene CD-ROM June 2003).  

The record here belies Cannon's claim.  It shows that Cannon never raised an objection to the adjustment committee's impartiality at the disciplinary hearings, as he was required to do.  We thus conclude that Cannon has failed to state a cause of action in this regard.  Accordingly, the trial court did not err by 
sua
 
sponte
 dismissing this claim. 
 

 As a final matter, we reiterate our statement in 
Mason
, 332 Ill. App. 3d at 843, 774 N.E.2d at 464, that--given that this court would be reviewing the trial court's decision without the benefit of argument from the defendant--when a trial court 
sua
 
sponte
 dismisses a DOC inmate's 
mandamus
 petition, 
the court should also set forth in the record the basis upon which that determination was made.  Unfortunately, in this case, the trial court did not state the basis for its decision.  This court ought not be required to review a record in detail to determine if the trial court properly 
sua
 
sponte
 dismissed a 
mandamus
 petition when the trial court itself has provided no analysis or explanation of the reasons for its dismissal.   

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

KNECHT, P.J., and COOK, J., concur.