NO. 4-05-0813     Filed: 4/21/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SERGIO TORRES, | ) | Appeal from |
|         Plaintiff-Appellant, | ) | Circuit Court of |
|         v. | ) | Sangamon County |
| ROGER E. WALKER, JR., | ) | No. 05MR225 |
| Director of the, Illinois Department | ) | |
| of Corrections; THE ADMINISTRATIVE | ) | |
| REVIEW BOARD; and SHELTON FREY, | ) | Honorable |
| Warden of Tamms Correctional Center, | ) | Leo J. Zappa, Jr., |
|         Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In April 2005, plaintiff, Sergio Torres, an inmate at Tamms Correctional Center, pro se filed a petition for writ of mandamus, in which he alleged that defendants, Roger E. Walker, Jr., the Director of the Department of Corrections (DOC), and Shelton Frey, Tamms' warden, violated his due-process rights in prison disciplinary proceedings.

In May 2005, defendants filed a motion to extend their time to answer Torres' complaint until June 30, 2005. However, in July 2005, defendants had not yet filed an answer when Torres filed a motion for a default judgment. Ten days later, defendants filed motions (1) seeking leave to file a motion to dismiss instanter and (2) to dismiss Torres' complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)).

In an August 2005 docket entry order, the trial court (1) denied Torres' motion for default judgment, (2) granted

defendants' motion to file a motion to dismiss, and (3) dismissed Torres' complaint.

Torres appeals, arguing that the trial court erred by (1) failing to rule on his motion for default judgment and (2) dismissing his mandamus complaint.  We disagree and affirm.

## I.  BACKGROUND

Torres' April 2005 mandamus petition, and the attachments thereto, in pertinent part, show the following.  In October 2004, Torres was issued two disciplinary tickets.  One ticket related to events that occurred on September 14, 2004, when Torres was assaulted in the gymnasium at Stateville Correctional Center.  According to the corrections officers who investigated the gymnasium incident, Torres was a member of the Spanish Gangster Disciples and had agreed to the assault, which was administered to him by fellow gang members as a form of discipline.  The disciplinary ticket charged Torres with violating the following DOC rules:  (1) Rule 205 (gang or unauthorized organizational activity); and (2) Rules 601 and 102 (aiding or abetting the assault of any person) (20 Ill. Adm. Code §504, app. A (Conway Greene CD-ROM June 2003)).

The other disciplinary ticket related to a fight that broke out in the Stateville dining room on September 17, 2004. During the dining-room incident, Torres was again assaulted and investigators determined that the fight was due to a gang-related dispute.  The disciplinary ticket charged Torres with violating the following DOC rules:  (1) Rule 205 (gang or unauthorized

organizational activity); (2) Rules 601 and 102 (conspiracy to commit assault of any person); and (3) Rule 105 (creating a dangerous disturbance) (20 Ill. Adm. Code §504, app. A (Conway Greene CD-ROM June 2003)).

Following a November 2004 adjustment-committee hearing on the two disciplinary tickets, the committee found Torres guilty of the charges alleged in both tickets. The committee's final summary report stated the basis for the committee's decision on the gymnasium incident, in pertinent part, as follows:

"Based upon the observation of the reporting employee that [i]nmate Dansberry *** (known leader for the Maniac Latin folk), and Aceituno *** (known leader for the Insane Branch) gave the o[.]k[.] for a violation (assault) on inmate Torres, that the videotape of the gym and that [Torres] was assaulted by closed fists punches to the body of Torres, corroborating information by confidential sources verified that [five other inmates] were involved in the violation, and that the [reporting employee] verified to the committee that the violation was reviewed on the video, and that [offender tracking system] verifie[d] that [Torres] is a member of the Spanish Gangster Disciples, and that a review of [Torres'] statement to the R/E was

done verifying that [Torres] did admit to the violation occurring, this committee is satisfied that the inmate is guilty of stated charges.

The confidential sources have proven to be reliable based on their corroborating statements on this incident. Confidential sources identified [Torres] by photo, cell assignment *** and by nickname YOYO."

The committee's final summary report on the dining-room incident contained a statement of the evidence relied on that was even more detailed than the description of the evidence contained in the summary report quoted above. Among other evidence, the report noted (1) the observations of the reporting employee, (2) information obtained from multiple confidential informants, and (3) Torres' admissions.

As to each ticket, the committee recommended the following sanctions be imposed on Torres: (1) one year relegation to C-grade status, (2) one year in segregation, (3) revocation of one year of good-conduct credit or statutory good time, and (4) other restrictions related to visitors and commissary privileges. The chief administrative officer agreed with the committee's recommendations, and these sanctions were imposed.

In December 2004, Torres filed a grievance with the administrative review board, complaining about the fairness and results of the November 2004 hearing. In January 2005, Torres

filed a "supplemental grievance," in which he further alleged that the final summary report he received on January 20, 2005, was not identical to the one he originally received following the November hearing. In February 2005, the board issued a return of grievance or correspondence, which showed that the board would not address the issues raised in Torres' December 2004 grievance because Torres had not submitted it "in the time frame outlined in Department Rule 504 [(20 Ill. Adm. Code §504 (Conway Greene CD-ROM June 2003))]".

Torres' April 2005 mandamus complaint alleged that (1) he was denied due process in the disciplinary proceedings in that the adjustment committee ignored certain evidence and (2) his grievances were not untimely. Defendants' July 2005 motion to dismiss alleged that Torres' complaint failed to state a claim for mandamus relief. Specifically, defendants asserted that the adjustment committee's final summary reports sufficiently stated the evidence upon which its findings were based.

In August 2005, the trial court conducted a telephonic hearing on pending motions. Later that month, the court (1) denied Torres' motion for default judgment, (2) granted defendants' motion to file motion to dismiss instanter, and (3) granted defendants' motion to dismiss Torres' complaint.

This appeal followed.

## II. ANALYSIS

### A. Torres' Claim That the Trial Court Failed To Rule on His Motion for Default Judgment

Torres first argues that the trial court erred by "ignoring" and failing to rule on his motion for default judgment. We reject this argument because the record clearly shows that the court considered and denied Torres' motion for default judgment.

### B. Torres' Claim That the Trial Court Erred by Dismissing His Mandamus Complaint

Torres next argues that the trial court erred by dismissing his mandamus complaint. We disagree.

"We review de novo a trial court's dismissal of a complaint for failure to state a cause of action." Scotti v. Taylor, 351 Ill. App. 3d 884, 887, 815 N.E.2d 10, 12 (2004).

> "Mandamus relief is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public official where the official is not exercising discretion. A court will not grant a writ of mandamus unless the petitioner can demonstrate a clear, affirmative right to relief, a clear duty of the official to act, and clear authority in the official to comply with the writ. The writ will not lie when its effect is to substitute the court's judgment or discretion for the official's judgment or discretion. Mandamus relief, therefore, is not appropriate to regulate a course of official conduct or to enforce the perfor-

mance of official duties generally." Hatch
v. Szymanski, 325 Ill. App. 3d 736, 739, 759
N.E.2d 585, 588 (2001).

An allegation of a due-process rights violation also states a cause of action in mandamus. Armstrong v. Snyder, 336 Ill. App. 3d 567, 571, 783 N.E.2d 1101, 1104 (2003). The United States Supreme Court has held that under the principles of due process, inmates are entitled to the following process in disciplinary proceedings: (1) notice of the disciplinary charges at least 24 hours prior to the hearing; (2) when consistent with institutional safety and correctional goals, an opportunity to call witnesses and present documentary evidence in their defense; and (3) a written statement by the fact finder of the evidence relied on in finding the inmate guilty of committing the offense and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-65, 41 L. Ed. 2d 935, 955-56, 94 S. Ct. 2963, 2978-79 (1974).

Torres contends that he was denied due process in that the adjustment committee's findings of guilt were without evidentiary support. Specifically, he asserts that (1) the committee (a) relied on unreliable evidence, (b) disregarded his claims of innocence, and (c) relied on confidential informants without requiring them to submit to polygraph testing; (2) the committee's stated reasons for its guilty findings did not explain why the committee found the investigators' evidence more credible than Torres' testimony; and (3) defendants used the disciplinary

proceedings to retaliate against Torres for his failure to provide information to the gang-intelligence unit.

We conclude that none of Torres' contentions are sufficient to show that his due-process rights were violated. In so concluding, we note that (1) it is the adjustment committee's role to assess the credibility of witnesses and make findings based on that assessment, (2) due process does not require the use of polygraph testing in disciplinary proceedings, (3) the committee's stated basis for its guilty findings was sufficient to satisfy due process (see Thompson v. Lane, 194 Ill. App. 3d 855, 864, 551 N.E.2d 731, 737 (1990) (holding that although detailed factual findings are not required, "mere conclusory statements" are insufficient)), and (4) Torres' claim of retaliation is an unsupported conclusory allegation.

Torres also contends that the adjustment committee failed to comply with section 504.80 of the Administrative Code (20 Ill. Adm. Code §504.80 (Conway Greene CD-ROM June 2003)) when it relied on evidence provided by confidential informants without substantiating their truthfulness. Section 504.80(l)(1) provides as follows:

"(A) The [c]ommittee may consider infor-
mation from confidential sources if:

(i) It finds that his or her
identity must be withheld for rea-
sons of security; and

(ii) The information is reliable.

8

(B) Reliability may be established by one of the following:

(i) The investigating officer has indicated, in writing and by his or her appearance before the [a]djustment [c]ommittee, the truth of his or her report containing confidential information;

(ii) Corroborating testimony such as statements from other sources or polygraph results; or

(iii) A statement by a member of the [a]djustment [c]ommittee or an oral or written statement to the [a]djustment [c]ommittee by supervisory or administrative staff that the individual has firsthand knowledge of the sources of information and considers them reliable on the basis of their past record of reliability.

(C) If the identity of a source is being withheld for reasons of security, a statement to that effect and a statement that the [c]ommittee finds the information reliable must be included.  A summary of the informa-

tion provided and the basis for the finding of reliability shall be documented, but need not be included in the summary based on safety and security concerns."  20 Ill. Adm. Code § 504.80(l)(1) (Conway Greene CD-ROM June 2003).

The adjustment committee's summary report on Torres' first disciplinary ticket (the gymnasium incident) stated that "the confidential sources have proven to be reliable based on their corroborating statements on this incident."  The committee's summary report on Torres' second disciplinary ticket (the dining-room incident) also states that the information provided by confidential informants provided corroborating evidence.  We conclude that these statements show that the committee complied with section 504.80 of the Code.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, P.J., and McCULLOUGH, J., concurr.